AUGUSTA DAHLBERG

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 21, 1907.*

1. CRIMINAL LAW—*the intent to commit mayhem, and adequate means, are essential to offense.* To support an indictment for an assault with intent to commit mayhem it must appear that the means employed were adequate and that the assailant intended to employ them for the purpose of mayhem.

2. SAME—*throwing red pepper not an attempt at mayhem.* Proof that the accused threw red pepper at the eyes of the person assaulted does not sustain a conviction for attempt to commit mayhem, where the evidence shows that the effect of red pepper is only to inflame the eye and not destroy it, as specified in section 207 of division 1 of the Criminal Code.

3. SAME—*what cannot be considered as an independent attempt to commit mayhem.* Unless charged in the indictment as one of the overt acts of an assault with intent to commit mayhem, proof that the accused, after throwing red pepper at the person assaulted, followed him up and struck him with her umbrella, blackening his eye, is not admissible to prove such act as an independent attempt to commit mayhem; and even though it might be admitted as part of the *res gestæ* attending the pepper throwing, it is error to admit the testimony of a physician describing the appearance of the eye the evening after the injury.

4. APPEALS AND ERRORS—*conviction must be reversed if not sustained by the evidence.* Notwithstanding the jury in a criminal case are the judges of the weight of the evidence, it is the duty of the Supreme Court to reverse a judgment of conviction based upon unsatisfactory evidence, or where there is such grave doubt of the guilt of the accused as to lead to the conclusion the verdict was the result of prejudice or passion, and not the result of the deliberate judgment which the law requires.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

LYNN & ROE, for plaintiff in error.

W. H. STEAD, Attorney General, JOHN J. HEALY, State's Attorney, and HARRY OLSON, for the People.

Per CURIAM: Plaintiff in error was found guilty by a jury in the criminal court of Cook county of an assault with intent to commit mayhem upon William Grace, and sentenced to the penitentiary on an indeterminate sentence. Motions for new trial and in arrest of judgment were overruled, and thereupon this writ of error was prosecuted.

It appears from the record that on September 15, 1905, William Grace and his son, H. E. Grace, left their office on Wabash avenue near Fourteenth street, Chicago, and crossed the intersection of the two streets diagonally, intending to take a street car down town. Plaintiff in error approached them, walking west along Fourteenth street. Considerable testimony appears in the record, and more was offered but ruled inadmissible, as to the relations between plaintiff in error and William Grace, which it is not necessary to refer to at length. It appears, however, that they had known each other for some twenty-two years. She claimed he was the cause of her separation from her husband and had persecuted her in many ways, while he in turn claimed she had "chased" him for many years and had written innumerable letters, both to himself and his family, causing him great annoyance, but that he was ready to forget her if she would let him alone. On the day in question, when they saw plaintiff in error, Grace and his son crossed Fourteenth street and started toward a neighboring livery stable, and upon Mrs. Dahlberg changing her course in the same direction they started back toward the usual place for taking the car, when she again changed her course and all three met near the center of Fourteenth street, about where the east sidewalk on Wabash avenue, if extended, would cross the street. When plaintiff in error was about three or four feet from William Grace the testimony tends to show that she took a small bag of red pepper in a powdered form from her satchel, and threw either the bag containing the pepper, as a whole, at William Grace, or, what is more probable from a comparison of the evidence of the various witnesses, threw

some of the contents first and then the bag with its remaining contents. While a small portion of the pepper fell on Grace's breast none of it reached his eyes. Some of it did enter the eye of a bystander, Richard Hinton, standing about ten feet away, and the bag itself, with a quantity of the pepper therein, fell to the ground and was secured by Grace's son and offered in evidence at the trial. After the pepper-throwing incident Grace and his son walked towards the livery barn. Plaintiff in error started to cross Fourteenth street in the opposite direction from the side on which the barn is situated and away from the direction taken by the Graces, but afterwards she took the same direction they did, and, catching up with them, struck William Grace across the eye with the handle of her umbrella, bruising and blacking the face in the immediate vicinity of the eye, but not injuring the eye in any way or causing any serious permanent injuries to the face. Grace and his son then went to the livery stable, and plaintiff in error, after following a part of the distance and possibly making other attempts to strike him with the umbrella, left.

Section 207 of division 1 of the Criminal Code (Hurd's Stat. 1905, p. 713,) provides: "Whoever, with malicious intent to maim or disfigure, cuts or maims the tongue, *puts out or destroys an eye,* cuts or tears off an ear, cuts, slits or mutilates the nose or lip, cuts off or disables a limb or other member of another person, shall be imprisoned in the penitentiary," etc. Section 1 of division 2 (Hurd's Stat. 1905, p. 730,) provides: "Whoever attempts to commit any offense prohibited by law, and does any act towards it but fails, or is intercepted or prevented in its execution, where no express provision is made by law for the punishment of such attempt, shall be punished, when the offense thus attempted is a felony, by imprisonment in the penitentiary," etc.

Mayhem, under the common law, while less inclusive than under our statutes, did include the striking out or blinding of an eye. (1 Hawkins' Pleas of the Crown, p. 107.)

An attempt is defined by a recent writer as "an intended, apparent, unfinished crime. * * * It must be apparent, since if it be obviously not likely to effect the result at which it aims (*e. g.,* where a pop-gun is leveled at a ship or a witch is employed to use enchantments,) it is not indictable. * * * It must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter." (1 Wharton on Crim. Law,—10th ed.— sec. 173.) The indictment can be sustained when the means are apparently adapted to the end. The offense is complete if the means employed appeared both to the assailant and to the assailed as adequate, but if the means are both absolutely and apparently inadequate then the attempt does not exist. To constitute an attempt "there must be such a preliminary overt act as may, by the course of the usual natural laws, apparently result, if not interrupted, in crime." (1 Wharton on Crim. Law,—10th ed.—sec. 183.) In order to make the offense indictable there must also be joined with the apparent adequate means a guilty intent; and this is especially so in proving an attempt to commit a crime. There must not only be the guilty intent, but there must be a specific intent to do the particular thing. (1 Bishop's New Crim. Law, p. 466.)

From a careful reading of the evidence in the record there appears to be no question that plaintiff in error threw red pepper at William Grace on the occasion mentioned, although she denies doing so. Did she, when she threw the pepper, intend to maim or disfigure him by putting out or destroying one or both of his eyes, and was the act of throwing the red pepper such a one as in the course of the usual and natural laws would, if uninterrupted, result in that crime?

The only testimony on behalf of the People to the effect that red pepper will put out or destroy an eye was given by Dr. Allport, who stated that in his opinion red pepper in the eye will destroy the sight; but, while evidently a doc-

tor of considerable experience and testifying in good faith, he admitted that he had never known of such an effect taking place, either from professional or personal experience, and did not care,—indeed did not seem able,—to quote any medical authority to sustain his opinion. Two witnesses introduced by the defense had had personal experience with pepper in their own eyes. One of them, Dr. Charles H. Miller, professor of pharmacology in a prominent medical college, testified that he had never known or read of a case of the sight being destroyed by red pepper; that he had made diligent search of the books and medical reports for such a case; that when a small boy he had accidentally got red pepper in his eyes, and when they were washed out with water and milk the only result was inflaming them for two or three days. The other witness, Dr. Stephen W. Cox, testified that in his opinion red pepper would not destroy the sight; that he had never known or read of its doing so; that it would affect the sight only a little while after it was washed out by the tears, and that on the morning of the day he testified he had put a pinch of red pepper in his own eye on two occasions, resulting only in four or five minutes' smarting; that he was willing to place then in his own eyes some of the pepper introduced in evidence as having been thrown by plaintiff in error. Both of these witnesses stated that if a large amount of pepper were placed in the eye and sealed there and not allowed to be washed out by tears or in some other manner, serious effects to the eye might be caused. It is quite evident from the testimony in this record that it was not in plaintiff in error's power, and could not have been her intention, to have the pepper remain in Grace's eyes any longer than it would take him to remove it in the ordinary course of events. Probably the best testimony as to the effects of the very pepper in question was offered by Richard Hinton, one of the witnesses for the State. He was standing about ten feet away when the accident took place and received a part of the pepper evidently intended

for Grace. He testified that his left eye was filled with pepper; that he took his handkerchief to wipe the pepper out, and as the water ran out it relieved the eye of the pepper. No serious or even disagreeable results followed, as is apparent from his testimony, for he was able to testify with considerable particularity as to what happened immediately after the pepper-throwing incident. It can hardly be contended that the pepper thrown by plaintiff in error, and which affected Hinton so slightly, would, if it had struck the eye of William Grace, for whom it was apparently intended, have destroyed or even seriously injured his eyesight.

We do not find it necessary to consider the question as to whether plaintiff in error could be convicted of an attempt at mayhem if, when she threw the pepper, she thought she had employed adequate means and intended to destroy the eyesight of William Grace, when, in fact, she used inadequate means for the purpose. There is no testimony in the record tending to show that she so believed and intended, and while in criminal cases the criminal intention may be manifested by the circumstances connected with the perpetration of the offense without any positive testimony as to intention, it certainly could not be inferred because plaintiff in error used inadequate means that she intended to use adequate means. Moreover, the former husband of plaintiff in error was a physician, and she herself testified that she knew red pepper would not blind. The testimony indicates that she had considerable acquaintance with acids which would undoubtedly have effected her purpose had she desired and intended to destroy Grace's sight.

It appears from the testimony that in the proceedings following the throwing of the pepper William Grace was struck across the eye with the handle of plaintiff in error's umbrella,—probably by her, although she denies it. The indictment does not charge this as one of the overt acts of an attempted mayhem, and the jury could not properly take

the evidence of the striking with the umbrella into consideration as an independent attempt at mayhem or to bolster up any supposed weakness of the case as to the attempt at mayhem by throwing pepper. The testimony showing that after throwing the pepper she followed him up and attempted to strike him with her umbrella might properly be admitted as a part of the *res gestæ*, but the evidence of William Grace's physician, Dr. Allport, that on the evening after the injury he examined Grace's face, and the description in his testimony of the injury alleged to have been caused by the umbrella, cannot be considered as a part of the *res gestæ* of the crime charged in this indictment. The testimony of Dr. Allport as to the injury caused by the umbrella was improperly and erroneously admitted. From this entire record we cannot escape the conclusion that the verdict of the jury was founded largely on the bruised eye, considered as an independent attempt at mayhem by a method not alleged and charged in the indictment. There seems to be some indications in the record that the evidence as to the umbrella incident was admitted to show the intent to injure the eye by throwing the pepper. The testimony in this case does not confirm that view. After plaintiff in error threw the pepper she started to cross the street away from Grace and his son, but apparently changing her mind she followed them toward the barn, and it was then the alleged striking with the umbrella took place. If she intended to put out his eye with the umbrella, prodding with the point of the umbrella would have been a more effective method than striking with the handle.

This court is committed to the fullest extent to the doctrine that the jury are the judges of the facts and the weight of the evidence in all criminal cases, yet it is the duty of this court to carefully review the evidence, and where we believe the conviction is based upon unsatisfactory evidence, or where, after a patient consideration of the evidence, "there remains such grave and serious doubt of the guilt of the

accused" (as alleged in the indictment) "as leads to the conclusion that the verdict of the jury is the result of prejudice or passion, and not of that calm and deliberate consideration of the evidence which the law requires," then we should so find. *Keller* v. *People*, 204 Ill. 604.

We do not think the evidence in this record was sufficient to justify the conviction for the crime alleged in the indictment. We are also of the opinion that the admission of Dr. Allport's testimony as to the character of the injury to the prosecuting witness alleged to have been caused by the umbrella was reversible error. Because of our ruling on these questions we do not find it necessary to discuss the other alleged errors.

The judgment of the criminal court will be reversed and the cause remanded.                    *Reversed and remanded.*