## Augusta Dahlberg, Appellee, v. William Grace, Appellant.

### Gen. No. 17,887.

1. MALICIOUS PROSECUTION—*probable cause.* In malicious prosecution, a conviction after a full and fair hearing by a court having jurisdiction of the person and the subject-matter, untainted by fraud, conspiracy to procure conviction by false testimony or subornation, or by any undue or unlawful means, is conclusive evidence of probable cause, but a conviction procured by a conspiracy to procure conviction by perjury is not conclusive as to probable cause.

2. MALICIOUS PROSECUTION—*acting on attorney's advice.* In an action for malicious prosecution, where the defendant consulted an attorney in good standing and gave him all the facts before commencing criminal proceedings and acted upon his advice, the defendant is not liable.

3. MALICIOUS PROSECUTION—*fraud or perjury.* The opinion of a medical witness that red pepper in the eye will destroy the sense of sight is one about which medical witnesses might reasonably differ, and no conclusion of fraud or perjury can be drawn therefrom.

4. MALICIOUS PROSECUTION—*payments to witnesses.* Moderate payments to witnesses for their time and luncheon are no indication of fraud or inducement to testify falsely.

5. APPEALS AND ERRORS—*verdict against weight of testimony.* While this court is committed to the doctrine that the jury should be the judges of the facts and the weight of the evidence, yet it

is the duty of the court carefully to review the evidence, and when the verdict is clearly and manifestly against the weight of the evidence, it will so find.

Appeal from the Superior Court of Cook county; the Hon. JOHN McNUTT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed with finding of fact. Opinion filed March 6, 1913.

JESSE HOLDOM and BITHER, GOFF & FRANCIS, for appellant; JESSE HOLDOM, of counsel.

SCHUYLER F. LYNN and FRANCIS E. HINCKLEY, for appellee.

MR. JUSTICE MCSURELY delivered the opinion of the court.

This is an appeal from a judgment obtained by Augusta Dahlberg, hereinafter called plaintiff, against William Grace, hereinafter called defendant, in an action for malicious prosecution. The jury returned a verdict for $22,500 which, by remittitur, was reduced to $12,500.

Defendant has been engaged as a contractor in business in Chicago for many years, and he and the plaintiff have been neighbors and acquainted with each other for a long time. Defendant at one time built for plaintiff an apartment house, and serious differences between them arose concerning the work of construction. There is some testimony touching upon the relations between the parties, to which it is unnecessary to refer at length. Defendant claims that plaintiff constantly annoyed and harrassed him, by accosting him on the street, coming to his office and making threats to kill him, and that at different times she made charges against him, including the charge of seduction and rape. Defendant had her arrested three or four times, acting under the advice of counsel.

On September 15, 1905, defendant and his son, Harvey E. Grace, left their office on Wabash avenue, near

14th street, Chicago, and crossed the intersection of the two streets, intending to take a street car down town. At this time plaintiff approached them, walking west along 14th street. When they saw plaintiff, defendant and his son crossed 14th street and started toward a neighboring livery stable, whereupon the plaintiff changed her course, going in the same direction; then they started back towards the usual place of taking the car, and plaintiff again followed them, and all three met near the center of 14th street about on the cross walk. When plaintiff was three or four feet from the defendant, the testimony tends to show that she took a small bag of red pepper in powdered form from her satchel, and threw either the bag containing the pepper, or some of the contents first and then the bag with its remaining contents, at the defendant. . While some of the pepper fell on his breast, none of it reached his eyes, although some of it did enter the eye of a bystander who was about ten feet away, and the bag itself, with a quantity of pepper therein, fell to the ground and was secured by defendant's son. After this incident defendant and his son walked toward the livery barn, while plaintiff started to cross 14th street in the opposite direction, but afterwards returned and caught up with them, struck defendant across the eye with the handle of an umbrella, bruising and blacking the face in the immediate vicinity of the eye, but not injuring the eye in any way or causing any serious permanent injury to the face. Apparently plaintiff followed and made other attempts to strike defendant with the umbrella.

Defendant and his son on the same afternoon went to the office of Dale & Francis, their attorneys, and there consulted with Mr. Francis, who was a lawyer in good standing in Chicago, telling him of the occurrence. They were advised by Mr. Francis to swear out a warrant for the arrest of plaintiff for assault with intent to commit mayhem. The following day

defendant and his son went to the office of Knight &
Brown, practicing attorneys in good standing in the
city of Chicago, and there consulted with Judge Brown
and Mr. King, a lawyer in the employ of the firm. De-
fendant and his son told these attorneys of the pep-
per throwing incident, and of the attack with the
umbrella. Judge Brown and Mr. King thereupon ad-
vised defendant to swear out a warrant and have plain-
tiff arrested for attempted mayhem. Before any war-
rant was sworn out or arrest made, defendant and his
son, with Judge Brown, went to the office of the state's
attorney for Cook county, and there consulted the
chief assistant prosecuting attorney, Harry Olson,
now chief justice of the Municipal Court. They told
Judge Olson of the red pepper throwing occurrence
and of the attack with the umbrella. Thereupon Judge
Olson advised the defendant to swear out a warrant
for the arrest of plaintiff before a justice of the peace
for assault with intent to commit mayhem. Defend-
ant thereafter appeared before a justice of the peace
with Mr. King, one of his attorneys, who prepared the
complaint and defendant signed it, in which complaint
defendant charged that plaintiff did unlawfully as-
sault the complainant with intent to commit mayhem.
Thereafter a hearing was had before the justice of the
peace and plaintiff was bound over to the grand jury.
At a later date defendant was subpoenaed before the
grand jury and testified before that body, and the
grand jury indicted plaintiff for maliciously attempt-
ing to put out the eyes of defendant by throwing red
pepper at him. Subsequently there was a trial had on
this indictment in the Criminal Court of Cook county,
and plaintiff was found guilty by a jury of the crime
of assault with intent to commit mayhem; and after
the presiding judge had overruled a motion for a new
trial she was sentenced to the state penitentiary for an
indeterminate term under the statute. From this
judgment plaintiff took the case to the Supreme Court
by writ of error, where the judgment was reversed

and the cause remanded.  Dahlberg v. People, 225 Ill. 485.

The gist of plaintiff's declaration was that the defendant by means of false swearing and the procuring of false swearing, procured the indictment aforesaid, and through the improper use of money procured witnesses, and by undue influence prevented plaintiff from having a fair trial in the Criminal Court; and that defendant caused false evidence to be given at the trial, and paid witnesses large sums of money, and large sums of money to investigators and detectives in order to procure false evidence against her on the trial, and thereby prevent her from having a fair trial; and that all this was done falsely and maliciously for the purpose of injuring her, and that the indictment was procured without reasonable and probable cause.

There seems to be no disagreement between counsel as to the law which should control this case with reference to probable cause.  The rule is correctly stated in Gilmore v. Mastin, 115 Ill. App. 46 (53), where Mr. Justice Adams, speaking for the court, said:

"While it seems reasonable to hold that conviction, after a full and fair hearing by a court having jurisdition of the person and subject-matter, untainted by fraud, conspiracy to procure conviction by false testimony, or subornation, or by any undue or unlawful means, should be conclusive evidence of probable cause, it seems unreasonable to hold that a conviction procured by a conspiracy to procure conviction by perjury, and so, in fact, procuring it  *  *  *  is conclusive evidence of probable cause,"

or, in other words, conviction in a criminal case is conclusive proof of probable cause for instituting the prosecution, unless such conviction was brought about by false or fraudulent testimony or other unlawful means.  Thomas v. Muehlmann, 92 Ill. App. 571. Therefore, the question before us is as to what proof was made by plaintiff to support her charges that the

conviction in the criminal case was brought about by false or fraudulent testimony or other unlawful means.
. Upon the trial in the Superior Court the plaintiff, to support the allegations of her declaration, placed upon the stand the defendant, and he was interrogated touching his conduct with reference to the trial in the Criminal Court. He stated that he never personally gave any witness for the state any money, and never indicated that they should be paid; that no money was ever paid under his instructions, except that he paid Dr. Allport, an expert, $50 for one day; that he had employed Knight & Brown as his attorneys, and that Mr. King, associated with them, was in the court room at the time of the criminal trial; that he talked with his attorneys about the facts, and talked with Judge Olson.

Defendant's son, Harvey E. Grace, testifying on behalf of the plaintiff, said that he talked with the witnesses prior to their going on the witness stand; did not talk with them as to any evidence they would give, but about attending court; that they were served with subpoenas and came to see the witness about attending court; that he tried to cause them as little loss of time as possible, in order to avoid taking them from their regular employment; that they were compensated for their time and were paid by a young man in the office of the William Grace Company; that they were paid about $12.00 apiece; that he gave one of them $2.00 one noon to go and get lunch for the three of them; and that no other money was spent at their office; that his father, the defendant, did not use any money in reference to that case that the witness knew of; that about $40.00 would cover all of the expense of the money given the witnesses; that Dr. Allport was his father's personal doctor, and that his bill was "for professional services to date;" that he was present at the time of the occurrence on Wabash avenue and 14th street, and saw what was done.

In this connection it should be noted that the Supreme Court in its opinion in the case of Dahlberg v. People, *supra,* reversed the case upon the ground that after a review and consideration of the testimony of the medical witnesses on the trial in the Criminal Court, it did not clearly appear that red pepper in the eye would destroy the sight, and therefore would not come within the division of the criminal code defining mayhem as an act done by one who "with malicious intent * * * puts out or destroys an eye." In the opinion of the Supreme Court, the evidence as to the destructive effect of red pepper in the eye was not sufficient to justify the conviction for the crime of mayhem.

It is sought by counsel for plaintiff to show fraud and perjury in the testimony of Dr. Allport upon the trial in the Criminal Court, where he testified that in his opinion red pepper in the human eye would destroy the sight. The argument that this testimony was perjury seems to be drawn from the fact that other medical experts testified to the contrary, and also because in the opinion of counsel for Mrs. Dahlberg the force of Dr. Allport's testimony was considerably weakened by cross-examination. We are not prepared to hold that the testimony of the medical witness, Dr. Allport, was perjury. It was merely opinion evidence upon circumstances about which medical witnesses might reasonably differ. Hence no conclusion of fraud or perjury can be drawn from anything testified to by him.

We have given nearly all the statements of the witnesses William Grace and his son, touching their conduct with reference to procuring the alleged perjured and false testimony in the criminal trial. As these statements were brought out by plaintiff in support of her case, it might well be held that she was bound by them; but we have searched the record in vain for anything tending to show any unlawful means used by the

defendant or his agents in connection with the trial of the criminal charge against the plaintiff. Naturally he and his son were interested in the outcome of the case, but not more so than any complaining witness in a criminal case might be. We cannot hold that the very moderate payment to witnesses for their time and for luncheon is any indication of fraud on the part of defendant, or any indication whatever that the witnesses were thereby induced to testify falsely. Counsel for plaintiff have failed to indicate any testimony which might reasonably be held to prove that the conviction in the criminal case was brought about by false and fraudulent testimony, or other unlawful means, and we see nothing of this kind in the record.

A further ground of defense is the rule that where a person before commencing criminal proceedings consults an attorney in good standing and gives him all the facts, and then acts upon the attorney's advice, he will not be liable in an action for malicious prosecution. Ross v. Inniss, 26 Ill. 259. There is no dispute between counsel as to this rule of law, but it seems to be contended by counsel for plaintiff that the evidence shows that defendant did not disclose all the facts to his counsel, in which case reliance upon the advice of an attorney would not avail. Turning, then, to the testimony of the defendant, at this time testifying on behalf of the plaintiff, we find that he says that he told Mr. Francis, the first attorney visited, exactly what had occurred; "I told him everything that had happened;" that he told Judge Brown and Mr. King "all the facts about the occurrence, and nothing but the facts;" that when he advised with Judge Olson, then assistant state's attorney, he told him "all the facts, everything I knew, for the purpose of getting his advice as to what to do." To the same effect is the testimony of the son, Harvey Grace, also testifying on behalf of plaintiff, and the testimony of these witnesses is corroborated by the testimony of Mr. Francis

and Mr. King and Judge Olson. Indeed, we are pointed to no testimony whatever tending even slightly to show that the defendant did not tell his attorneys all the facts of the occurrence on September 15, 1905, at Wabash avenue and 14th street.

This court is committed to the doctrine that the jury should be the judges of the facts and the weight of the evidence. Yet it is the duty of this court to carefully review the evidence, and where we believe that the verdict is clearly and manifestly against the weight of the evidence, then we should so find. In the case at bar we are of the opinion that not only is the verdict against the weight of the evidence, but that there is practically no evidence whatever tending to overcome the *prima facie* effect of the conviction in the criminal case touching probable cause, neither is there any evidence tending to negative the claim of defendant that he acted as he did upon the advice of his attorneys, after having informed them truthfully of all the facts. In our opinion there can be no recovery by the plaintiff upon the record before us, and the judgment will be reversed.

*Reversed with finding of fact.*