**People of the State of Illinois, Plaintiff-Appellee, v. Joseph S. McCombs, Defendant-Appellant.**

**Gen. No. 67–115.**

Second District.

April 29, 1968.

Mackenzie, Vescelus, Leetz & Perry, of Wheaton (John T. Perry, of counsel), for appellant.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Kevin P. Connelly, Assistant State's Attorney, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

In a trial by the court after waiver of jury, the defendant was found guilty of the crime of burglary, and thereafter, released on probation. From the judgment of conviction the defendant appealed.

Defendant alleges as errors, that he was not proven guilty beyond a reasonable doubt; that the people should have been required to specify the felony charged in the indictment; that the trial court improperly excluded evidence; and that the trial court improperly denied defendant access to grand jury testimony prior to trial.

The defendant, Joseph S. McCombs, was nineteen years old at the time of the incident alleged in the indictment.

Some three months prior to the offense charged in the indictment, the defendant was involved in a motorcycle accident which rendered him unconscious and resulted in his hospitalization in St. Louis, Missouri. As a result of this occurrence, the defendant was missing a piece of bone from his skull and was temporarily paralyzed on his left side. During his convalescence the defendant resided with his parents in Wheaton. At this time, defendant was visited by one, Barbara Berg, an acquaintance from his high school days in Wheaton. The defendant and Barbara Berg had dated for a period of two to three months during the year of 1963. During this period of their initial acquaintance of 1963, the defendant was with Barbara Berg without the consent of Barbara Berg's parents on a number of occasions. These rendezvous took place in the

early morning hours anywhere from midnight to just before dawn. He and Barbara Berg would either pre- arrange these meetings, or defendant would knock on her bedroom window. The defendant had been in the Berg house frequently and knew the location of her bedroom. He and Barbara, according to the testimony of Barbara, engaged only in "necking" and "kissing" during their early morning rendezvous. The defendant renewed his acquaintanceship with Barbara in the latter part of August 1965, a year before the occurrence alleged in the indictment.

During the month of August 1965, Barbara Berg spent the night in the home of the defendant and the parents of the defendant were not present. Along with Barbara Berg, two other girls were present, as was the defendant and one other male. Barbara Berg was clothed in a sweatshirt and a pair of panties.

Early in the evening of August 13, 1966, the defend- ant had a date with a girl other than Barbara Berg. They went to a couple's home for an evening of drinking beer and watching television. The defendant and the host purchased a case of beer which they proceeded to drink while watching television.

The defendant and his date left the hosts' home at approximately 12:30 a. m. on August 14, 1966, the date of the occurrence alleged in the indictment. They went to a restaurant and drank coffee until approximately 2:00 a. m. The defendant then returned his date to her home in Wheaton. They talked outside of her home for approximately forty-five minutes and thereafter the de- fendant escorted his date to the door.

The defendant then drove his automobile to the resi- dence of Barbara Berg, parked his car and walked to the front door. The defendant found the front door open and walked in. Prior to his entry into the house, the defendant removed his shoes, and upon entry removed

his trousers and shirt and proceeded to the bedroom of Barbara Berg.

The mother of Barbara Berg, became aroused from her sleep and walked to the front of the house where she noticed the front door ajar. She closed the door and made a quick tour of the bedrooms.

The last bedroom Mrs. Berg checked was the bedroom ordinarily occupied by her oldest daughter, Barbara, but on this night it was occupied by her daughter, Betty, age 15. Betty was lying on her side sleeping. The bottom part of her two-piece nightie was pulled down to her knees and the white skin of her buttocks contrasted deeply with the dark tan. The nightie was the type that had elastic at the waist and about the legs. Mrs. Berg pulled the nightie up, called to her daughter and shook her lightly. She turned the light on, on the table beside the bed, and at this time noticed the defendant huddled against the wall dressed in only his socks and jockey shorts. His clothing appeared to be folded beside the bed. Mrs. Berg jumped up, screamed and attempted to capture the defendant. He broke away and the defendant was captured in the hallway by the husband of Mrs. Berg and other members of the family. They did not recognize the defendant until after he was subdued. The police were thereafter called and the defendant's clothing was retrieved from the hallway.

The defendant testified that he went to the Berg residence to see Barbara Berg. He parked his car several doors from the Berg residence and placed his shoes under the evergreens. He turned the knob on the front door and found it unlocked. He then placed a hose so that it would keep the screen door open and left the door open behind him. After he entered, he removed his trousers and shirt in the hallway. He proceeded to a bedroom which he thought was Barbara's and was in the bedroom only a short time when he heard someone moving.

The defendant testified he shrank against the wall and dropped his clothing. This defendant further testified

311

that he did not recognize the sleeping figure in the bed and further, that he did not touch either the person or the clothing of the person lying in the bed.

The defendant first contends that the people have failed to prove beyond a reasonable doubt one of the essential elements of the crime of burglary. With this contention we agree.

The gravamen of the offense of burglary is the intent with which the building is entered. People v. Maffioli, 406 Ill 315, 320, 94 NE2d 191 (1950). Further, the specific felonious intent must exist and may be measured at the time of an unauthorized entry into the dwelling of another. In People v. Gooch, 70 Ill App2d 124, 130, 217 NE2d 523 (1966), the court held that the crime of burglary was completed upon entering with intent to steal.

In the case of People v. Soznowski, 22 Ill2d 540, 543, 177 NE2d 146 (1961), the court held that in a burglary prosecution, the requisite felonious intent is a matter of fact and cannot be implied as a matter of law. The burden is, of course, on the prosecution to prove beyond a reasonable doubt the element of felonious intent in the crime of burglary.

The defendant contends and rightly so, that the court must look to the specific intent of the defendant at the time of his entry into the residence of Barbara Berg. The intent must be determined from the facts in the case.

The evidence further shows that the defendant was only vaguely acquainted with Betty Berg, the fifteen-year-old lying in the bed in the bedroom, the sister of Barbara. Further, the evidence of the stated intention of the defendant who testified was that he was going to see Barbara. The prosecution evidence was directed towards proof of intent either towards rape, or indecent liberties with a minor, to wit, Barbara's younger sister, Betty. Little more was raised than a suspicion that the

defendant touched or fondled Betty, and in fact, we have the testimony of the defendant that he did not touch or fondle the person or clothing of Betty Berg.

Therefore, it can be said that, without resorting to natural speculation, such evidence constitutes, at most, an inference that, at the time of defendant's entry into the Berg residence, the defendant intended to resume a previously defined relationship with Barbara Berg, a consenting adult. This evidence raises sufficient and consistent circumstances to negate the inference of the intent to commit a felony sufficient to sustain a conviction of burglary.

It is axiomatic that it is the province of the trial judge hearing the case without a jury, to determine the credibility of the witnesses and the weight to be given to their testimony, and his judgment will not be disturbed unless manifestly contrary to the weight of the evidence. Yet, if a review of the evidence and a consideration of the entire record leaves us with a grave and serious doubt of the guilt of the accused, it is our duty to reverse the judgment. People v. Campagna, 240 Ill 378, 390, 88 NE 797 (1909); Dahlberg v. People, 225 Ill 485, 491, 80 NE 310 (1907). The record before us does little more than raise a suspicion of the defendant's guilt, and the judgment of conviction cannot be allowed to stand. In this view it becomes unnecessary to consider defendant's other claims of error. We therefore reverse.

Reversed.

DAVIS and MORAN, JJ., concur.