511 P.2d 560

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Ralph D. ARMSTRONG, Defendant-Appellant.**

**No. 1004.**

Court of Appeals of New Mexico.

May 23, 1973.

Certiorari Denied June 15, 1973.

Thomas E. Horn, Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Ronald Van Amberg, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

HERNANDEZ, Judge.

Defendant was convicted after trial by jury on one count of rape (§ 40A–9–2, N. M.S.A.1953 (2d Repl. Vol. 6)) and one count of sodomy (§ 40A 9–6, N.M.S.A. 1953 (2d Repl.Vol. 6)).

On the night of October 3, 1971 at about 11:15 the prosecutrix was returning home. She had parked and locked her car when another car drove up and stopped behind hers. A man, later identified as the defendant, got down and called to her and as she turned he walked up and took her by the arm. He had a knife in his hand which he held close to her stomach. He ordered her to get back into her car on the passenger side. Defendant then got in and drove to an isolated area east of Albuquerque where the acts complained of were committed.

Defendant does not dispute the fact that the sexual acts complained of took place. Instead, he contends that: (1) the New Mexico sodomy statute under which he was convicted, § 40A–9–6, supra, is unconstitutional because it is overly broad; (2) that the trial court erred in refusing to give two requested instructions relating to a defense of consent on the rape count; and (3) that his motion to suppress evidence of an out-of-court photographic identification of defendant by the prosecu-

trix and her subsequent in-court identification was improperly denied.

We affirm.

We discuss the points in inverse order.

(1) *Denial of the motion to suppress the photographic identification and the in-court identification.*

The prosecutrix was shown a group of photographs including one of defendant sometime during the course of the investigation. Defendant asserts that the identification of the defendant by the prosecutrix at trial was tainted by the previous photographic identification because there was a "complete lack of similarities between the persons [in the photographs] shown the complainant * * * [and] [s]uch a lack of similarities clearly creates a substantial likelihood of misidentification." The photographs themselves were not introduced into evidence at the trial, nor was the earlier photographic identification alluded to in the presence of the jury.

The trial court reviewed the photographs at trial and denied the motion to suppress. The test in New Mexico with respect to suppression of out-of-court photographic identifications is whether the " 'photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " State v. Baldonado, 82 N.M. 581, 484 P.2d 1291 (Ct.App.1971); State v. Gilliam, 83 N.M. 325, 491 P.2d 1080 (Ct.App.1971). The photographs are of individuals of about the same age, hirsuteness and color as the defendant and there is nothing about them, in our opinion, that is "impermissibly suggestive" or would lead to an "irreparable misidentification."

Moreover, the facts of this case lead inescapably to the conclusion that whatever impact the earlier photographic identification had upon the prosecutrix, her in-court identification was independent of the earlier showing of photographs. The prosecutrix was abducted at about 11:00 p.

m. and not released until shortly before 3:00 a. m. When asked to identify the defendant in court her identification was unhesitating:

"Q. Did you have occasion to see that man's face at that time or later in the evening?

"A. Yes, sir.

"Q. Are you able to identify him?

"A. Most definitely."

Under these circumstances we must conclude that the in-court identification of defendant was independent of the earlier photographic identification. State v. McCarty, 82 N.M. 515, 484 P.2d 357 (Ct.App. 1971); State v. Morales, 81 N.M. 333, 466 P.2d 899 (Ct.App.1970), cert. denied, 400 U.S. 842, 91 S.Ct. 84, 27 L.Ed.2d 77 (1970).

(2) *Refusal to give the two requested instructions on consent as a defense to the charge of rape.*

At the conclusion of the evidence, defendant submitted two requested instructions on the defense of consent:

"2. To constitute the crime of rape, it must be without the consent of the *complainant. If you find that there* was no actual consent, then you must ask yourselves whether a reasonable man in the same or similar circumstances as the defendant would have thought that the complainant was consenting. If a reasonable man in the same or similar circumstances as the defendant would have thought the complainant was consenting, then you must find him not guilty of the crime of rape.

"3. You are instructed that a reasonable belief that the complainant is consenting is a defense to the crime of rape even though she may not have actually consented."

The trial court gave as its instruction No. 3 the following:

"You are instructed that 'rape' is defined as a male causing a female other than his wife to engage in sexual intercourse with him without her consent when the female's resistance is forcibly overcome."

Defendant alleges that he was entitled to have his instructions given because the prosecutrix' actions were consistent with a reasonable belief that she was consenting to the acts of sexual intercourse. The only witness at trial who testified as to the sexual relations was the prosecutrix.

. She testified that when defendant entered the car the first time, she initially attempted to converse with him "rationally", because "I was scared to the point if I did anything to upset him he would hurt me." When asked, "Did you make any forceful physical attack; did you use any force toward him?", she replied, "I was trying to push him away." After defense counsel inquired further as to her actions she states:

" *  *  *  I tried to push him away from me, keep him away from me. I did no more. There was not much room. I couldn't move anymore. I told him I did not want to participate, it was his game, not mine."

She further stated that when defendant was attempting rectal intercourse, " *  *  *  I protested harshly  *  *  *  He did it anyway and said 'Shut up and do what I tell you.' "

■■ As a general rule, a defendant is entitled to an instruction supporting his theory of the case when there is evidence to support it. State v. Garcia, 79 N.M. 367, 443 P.2d 860 (1968); State v. Parker, 80 N.M. 551, 458 P.2d 803 (Ct.App.1969). Here, a review of the record and a thorough examination of the prosecutrix' testimony, as shown above, does not even raise a slight inference of consent on the part of the victim. Having failed to have some evidence upon which to support an instruction on his theory of the case (consent) it was not error for the trial court to deny defendant's requested instruction.

**(3)** *The overbreadth of the New Mexico sodomy statute.*

Defendant argues that the sodomy statute in this state is unconstitutional because the language of the statute is overbroad and may be used to punish as crimes private sexual acts between consenting adults, including, conceivably, acts between husband and wife. He asserts that such a statute violates a marital right of privacy as set out in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), that it violates a similar right of privacy granted to unmarried persons and persons of the same sex, Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L. Ed.2d 349 (1972), and finally, that because the sodomy statute makes criminal certain tenets held by various religious groups it thereby constitutes an "establishment" of religion in violation of the First Amendment of the United States Constitution.

We do not reach these contentions because we conclude that defendant does not have standing to challenge the constitutionality of the statute. The constitutional attack on the sodomy statute here is substantially the same as the challenge interposed in State v. Kasakoff, 84 N.M. 404, 503 P. 2d 1182 (Ct.App.1972). In Kasakoff, we held with respect to defendant's standing to attack the statute on constitutional grounds:

"Since the state's evidence was that the act was committed by force * * * he cannot now argue that the incident was a consensual act between two adult persons.

  *    *    *    *    *    *

"Since the defendant does not claim nor argue that he is a member of the class discriminated against by the sodomy statute or that his rights have been impaired by the application of the statute to him, he lacks standing to challenge the constitutionality of the act."

Defendant's acts were committed with force and without the consent of the prosecutrix. The defendant and the victim were not husband and wife. The defend-ant here like the defendant in Kasakoff is attempting to challenge the statute on grounds not properly raised by the facts of this case. We hold that he has no standing to challenge the constitutionality of the sodomy statute.

Affirmed.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, J., concurs in part and dissents in part.

SUTIN, Judge (concurring in part and dissenting in part).

I concur on rape and dissent on sodomy.

Defendant was convicted of sodomy. Section 40A–9–6 N.M.S.A.1953 (2nd Repl. Vol. 6). In the trial court, by motion, written and oral, defendant moved to dismiss the sodomy charge because the statute was unconstitutional. The motion was denied. On appeal, (1) defendant had standing to challenge the constitutionality of the statute in this court; (2) the statute is unconstitutional.

1. *Standing to challenge constitutionality of statute should not be resolved by expediency.*

In a dissent in Richardson v. United States, 465 F.2d 844 (3rd Cir. 1972), Judge Adams wrote:

The question of standing has confounded courts and commentators for many years. Although the Supreme Court has considered the problem in several different contexts, and many learned and provocative articles have discussed the Supreme Court decisions, the law is still quite murky.

The traditional test for determining standing is whether there is a sufficient nexus between the status of the defendant and the statute being challenged which sends defendant to prison. If the sodomy statute sends defendant to the penitentiary, it certainly affects his rights to freedom.

The majority rely on State v. Kasakoff, 84 N.M. 404, 503 P.2d 1182 (Ct.App.1972).

It held a defendant had no standing if he did not claim or argue (1) he was a member of a class discriminated against by the sodomy statute or (2) that his rights have been impaired by application of the statute to him.

To conclude that a man's rights are not impaired by imprisonment is a return to the philosophy of the middle ages.

"Judicial expediency" in determining standing to challenge the constitutionality of a statute is used here to mean: the discretion exercised by an appellate court to achieve an immediate end, "lack of standing," to avoid the ultimate end to determine a constitutional issue; to determine what is right and just. If an appellate court does not desire to determine a constitutional question, it may avail itself of its "almost inexhaustible arsenal of techniques and devices" to avoid constitutional judgment. We should listen to critical analysis of "standing."

*First*, the constitutionality of a criminal statute is jurisdictional and will be considered on review. State v. Austin, 80 N.M. 748, 461 P.2d 230 (Ct.App.1969). "If the law is void, no crime has been committed and none can be committed under it, and the court has no jurisdiction over the person of the defendant or the subject-matter of the cause. It is a proceeding to punish a man where there is no law authorizing the same." State v. Diamond, 27 N.M. 477, 202 P. 988, 20 A.L.R. 1527 (1921). Unconstitutional acts are as inoperative as though they had never been passed. Town of Las Cruces v. El Paso Cotton Industries, 43 N.M. 304, 92 P.2d 985 (1939). If the sodomy statute is unconstitutional, no crime can be committed under it. No citizen can be imprisoned.

The only reason defendant's standing was pushed down is because defendant did not claim that consensual sexual deviation is a deprivation of his constitutional rights. This is called "judicial expediency." There is no question here of an unconstitutional feature of the statute; the entire statute is void.

*Second*, on sodomy, the majority opinion states:

Defendant's acts were committed with force and without the consent of the prosecutrix.

"Force is not an element of the crime." Washington v. Rodriguez, 82 N.M. 428, 483 P.2d 309 (Ct.App.1971). The trial court did not instruct the jury that "force" was necessary to prove the offense of sodomy. The jury did not determine that issue of fact. The jury found defendant guilty of consensual sodomy as defined in the statute. On appeal, we have no right to review the evidence to determine issues of fact not submitted to the jury to find an excuse for avoiding judgment on the constitutional issue.

It is obvious that defendant's rights were impaired by the sodomy statute. He was charged with its violation. He was convicted. The constitutionality of this legislative act is open to attack. State v. Hines, 78 N.M. 471, 432 P.2d 827 (1967). State v. Kasakoff, supra, should be overruled. See Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

*Third*, if a defendant will go to the penitentiary on the basis of a criminal law which he declares to be invalid, we should not deliberately avoid examination of the constitutionality of the statute. If it is unconstitutional, it was never in existence and defendant cannot be charged with the crime under that statute. It is the essence of judicial duty to determine all questions upon which the decision of a case before us depends. I adopt the "classical theory." Scharpf, Judicial Review And The Political Question: A Functional Analysis, 75 Yale Law Journal, 517, 518 (1966) wrote:

For the protagonists of the "classical theory" of judicial review, there can be no such discretion. They insist, as did John Marshall in Marbury v. Madison, [5 U.S. (1 Cranch) 137, 177–178, 2 L.Ed. 60 (1803)] that the *power* of judicial review rests ultimately upon the constitutional *duty* of the judiciary "to say what the law is"—that is, to exercise its inde-

pendent judgment in finding, interpreting and applying the law (including the law of the Constitution) whenever the decision of a case and controversy should depend on it. (Emphasis by author)

This rule should be applicable in all criminal cases under which a defendant is directly charged with violation of a criminal statute. We must not demand an admittance by the parties of conduct which violates the criminal statute and then request prosecution.

For one example: To have "standing" and to follow the dictates of judicial expediency to test the constitutionality of the sodomy statute, the defendant and the prosecutrix, or a married man and woman must admit they committed consensual sodomy and then one charge the other with violation of the statute. Both parties are principals under the statute. Both may go to the penitentiary. This is not right or just or socially expedient. Yet, in holding a defendant does not have "standing", a court does not hesitate to say: "We shall decide that question when it is properly presented to us." Hughes v. State, 14 Md.App. 497, 287 A.2d 299 (1972). This standard of judicial opinion does not meet the test of justice under law.

We should not seek shelter on "standing" merely because the determination of the issue might be unpopular, or even extremely unpopular, but nevertheless right or just. The legislature and the governor can amend this sodomy statute by vote and by a flip of the pen. We have a duty to determine the constitutionality of the sodomy statute to protect the rights of innocent persons.

In all cases touching life or liberty, I deem it the duty of this court, when once it assumes jurisdiction of a case, to protect citizens on constitutional issues whether regarded or disregarded in the court below.

A review of judicial decisions and analysis thereof on the issue of "standing" follows no definite pattern. It is a "crazy quilt."

The "standing rule in criminal cases should also apply as a matter of public policy where defendant and third parties are involved in the constitutionality of the law." See Sedler, Standing To Assert Constitutional Jus Terti In The Supreme Court, 71 Yale Law Journal, 599, at 624 (1962).

Defendant had the right to assert the invalidity of the sodomy statute because his rights were adversely affected by it.

2. *The sodomy statute is unconstitutional.*

For the same reasons stated in the dissent in State v. Trejo, 83 N.M. 511, 513, 494 P.2d 173 (Ct.App.1972), the sodomy statute is unconstitutional. The purpose of this dissent is not to sanction public or private deviant sexual intercourse made unlawful by illegal conduct. Its purpose is to seek adoption of the Model Penal Code of the American Law Institute, 1962, § 213.2 to avoid an invasion of the right of privacy. See Sodomy And The Married Man, 3 U.Richmond L.Rev. 344, 347 (1969).

Courts have said that no wife would charge her husband with sodomy committed in the privacy of the home. When done with force, it has occurred. Towler v. Peyton, 303 F.Supp. 581 (D.C.Va.1969).

However, it has been held that the sodomy statute cannot be applied to private consensual sexual acts involving adults. Rittenour v. District of Columbia, 163 A.2d 558 (D.C.Mun.Ct.App.1960); Schaeffers v. Wilson, C.A. 1821–71 (D.C.D.C. May 24, 1972); Morrison v. State Board of Education, Cal.App. 74 Cal.Rptr. 116 (1968), vacated 82 Cal.Rptr. 175, 461 P.2d 375 (1969); In re Labady, 326 F.Supp. 924 (D.C.N.Y.1971); United States v. Griffith, Super.Ct.D.C. No. 53440–72, March 19, 1973; United States v. Moses, et al., Super. Ct.D.C. No. 17778–72, November 3, 1972; United States v. Doe, et al., Super. Ct.D.C. No. 71860–71, February 21, 1973.

A man's home is his castle. If he placed in his home Michelangelo's "David", or exhibited a movie showing consensual sex de-

viation, or hung on his wall, Altdorfer, Lot and His Daughter and Carracci, Love in the Golden Age, and other paintings of Sex and Erotica, all of which are shown publicly, does legislative power extend into this man's home? Can it send him to prison? Of course not, Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Constitutional legislative power in this area covers "laws providing for the preservation of the *public* peace, health or safety." [Emphasis added] Article IV, Section 1, Constitution of New Mexico, Repl.Vol. 1, page 288.

For the same reasons, the legislature cannot invade the privacy of a person's conduct in his dwelling place or shelter.