539 P.2d 207

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Donald Ray ELLIOTT, Defendant-Appellant.**

**No. 1682.**

Court of Appeals of New Mexico.

July 9, 1975.

Certiorari Granted Aug. 11, 1975.

Chester H. Walter, Chief Public Defender, Bruce L. Herr, Appellate Defender, Robert R. Rothstein, Asst. App. Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Morton A. Resnick, Bill Primm, Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

SUTIN, Judge.

Defendant was convicted of sodomy, § 40A–9–6, and burglary, § 40A–16–3, N.M. S.A.1953 (2nd Repl. Vol. 6, 1972). He appeals. We reverse.

A. *The sodomy statute is unconstitutional.*

In *State v. Trejo,* 83 N.M. 511, 494 P.2d 173 (Ct.App.1972) (Sutin, J., dissenting), and *State v. Armstrong,* 85 N.M. 234, 511 P.2d 560 (Ct.App.1973) (Sutin, J., dissent-ing), I stated my view that the sodomy statute, § 40A–9–6, is unconstitutional and void. Today, the majority of the Court so holds.

This statute reads:·

Sodomy consists of a person intentionally taking into his or her mouth or anus the sexual organ of any other person or animal or intentionally placing his or her sexual organ in the mouth or anus of any other person or animal, or coitus with an animal. Any penetration, however slight, is sufficient to complete the crime of sodomy. Both parties may be principals. ·

Whoever commits sodomy is guilty of a third degree felony.

The sodomy statute is unconstitutional because the statutory language provides that consenting adults who commit the acts described therein are guilty of a crime. We hold that (1) this appeal provides a proper forum for this Court to decide this issue. (2) With respect to married persons, the statute violates the right of marital privacy guaranteed by the First and Ninth Amendments to the United States Constitution. (3) The Equal Protection Clause of the Fourteenth Amendment to the Constitution requires that the statute apply equally to married and unmarried persons. (4) The statute unconstitutionally invades the privacy of the home. (5) The police power of the state does not extend to sodomitic acts between consenting adults.

(1) *This appeal provides a proper forum for this Court to decide the issue of the constitutionality of the sodomy statute.*

(a) *Mutual Consent*

The record is ambiguous on the issue of mutual consent.

The defendant was charged with rape and sodomy. He was acquitted of rape and convicted of sodomy. The rape statute, § 40A–9–2, provides that the act be committed *without the victim's consent.* The sodomy statute does not.

The prosecutrix testified that the alleged acts of sodomy and rape all took place in her bedroom on the same evening, in rapid succession. The jury's contrary verdicts as to rape and sodomy indicate that the jurors believed the acts did take place, but that they took place with the consent of the prosecutrix. *Such consent would lead to a not guilty verdict, as to rape; however, it would lead to a guilty verdict as to sodomy.*

The prosecutrix's testimony indicates that she consented to these acts. She believed the defendant was holding a knife; but she never saw the knife. She did not scream when he made advances to her. She did not try to fight him off, although she argued with him. The defendant had been at her house earlier that evening and night, for a party. She had driven with him to take some people home from the party. During her marriage, she had had intercourse with two men other than her husband and the defendant, one of them within a few days of the alleged crimes. She had once before been involved in similar charges (statutory rape) against another man.

From the prosecutrix's testimony and the jury's contrary verdicts as to rape and sodomy, the most reasonable inference is that the jury found the alleged sodomitic acts to have taken place with the consent of the prosecutrix. Therefore, defendant's appeal allows this Court to decide whether the sodomy statute invades the constitutional rights of consenting adults.

(b) *Lack of Mutual Consent*

Even if the prosecutrix did not consent to the alleged sodomitic acts, this appeal nonetheless provides a proper forum for this Court to decide whether the sodomy statute invades the constitutional rights of consenting adults.

In *State v. Armstrong, supra,* this Court held that the constitutionality of § 40A–9–6 could not be decided unless the parties involved are consenting adults. Today we overrule that holding. We hold that an appeal of a conviction under § 40A–9–6 allows this Court to decide the constitutionality of that section on its face, regardless of the presence or absence of consent to the allegedly unlawful acts.

This Court has the power to decide the constitutionality of the sodomy statute on its face without reference to the particular conduct of the litigant whose prosecution calls the statute's validity to the Court's attention. *Coates v. Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Baggett v. Bullitt,* 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

■ Our power to so rule is clear when the statute violates a First Amendment or other "fundamental right." *United States v. Doe,* 12 Cr.L. 2531 (D.C.Super.Ct.1973). The right to marital privacy and the right to privacy of the home which, we hold today, are violated by § 40A–9–6, are fundamental rights.

■ *The right to marital privacy* is a fundamental right, protected by the First and Ninth Amendments. *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Opinion of the Court; Opinion of Goldberg, J., concurring). Since *Griswold,* the Supreme Court has held that the right to marital privacy, with respect to procreation, sexual practices and family relations, is guaranteed by the Fourth, Fifth, and Fourteenth Amendments, in addition to the First and Ninth Amendments. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). It is a right that is " 'fundamental' or 'implicit in the concept of ordered liberty,' *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)." *Roe v. Wade, supra,* 410 U.S. at 152, 93 S.Ct. at 726, 35 L.Ed.2d at 176.

■ *The right to privacy of the home* is, likewise, a fundamental right. *Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1969) (Harlan, J., dissenting); *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct.

2628, 37 L.Ed.2d 446 (1973); *Ravin v. State*, 537 P.2d 494 (Alaska, 1975).

■ Further authority is provided by analogy to the rule on standing to challenge a statute's constitutionality. That rule is: A defendant cannot attack the statute on the ground that it may be unconstitutional as applied to third parties, if it is constitutional as applied to himself. *United States v. Raines*, 362 U.S. 17, 80 S. Ct. 519, 4 L.Ed.2d 524 (1960). This is a judicial *rule of practice*, which, although weighty, is not inviolable, as are *principles ordained by the Constitution*. Weighty countervailing policies give rise to exceptions to such rules of practice. There are four exceptions to the rule of judicial self-restraint in addressing the question of a statute's constitutionality. One of those exceptions arises in a case in which *the litigation would impair the constitutional rights of one not a party to the action, who has no effective way himself to preserve those rights. Id.*

By analogy to the above exception, this Court has the power to decide, absent consent, the issue involved, if consenting adults have no effective way to prevent infringement of their rights by the sodomy statute.

There is no record in New Mexico of the prosecution of openly consenting adults under the sodomy statute. Because consenting adults are not, in practice, subject to prosecution for sodomy, they are denied a forum in which to assert their own rights. *Griswold, supra*; *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L. Ed.2d 349 (1972).

The fact that consenting adults in New Mexico have not, in practice, been subject to prosecution for sodomy does not demonstrate that their rights are not violated by the sodomy statute. The threat of prosecution remains.

In the face of a rigid and narrow statute . . . no one in these circumstances should be placed in a posture of dependence on a prosecutorial policy or prosecutorial discretion. *Roe v. Wade, supra,* 410 U.S. at 208, 93 S.Ct. at 755, 35 L. Ed.2d at 185 (Burger, C. J., concurring) (1973).

See, also, *Poe v. Ullman, supra* (Douglas J., dissenting). Furthermore, many citizens obey criminal statutes despite the prospect of lax enforcement. *United States v. Doe, supra.*

Since attack by consenting adults against infringement of their constitutional rights is impractical and unlikely, this Court can decide the constitutional question by analogy to the *Raines* exception to the rule of practice on standing to challenge a statute's constitutionality.

■ We conclude that this appeal provides a proper forum to decide whether the sodomy statute, on its face, invades the constitutional rights of consenting adults for any of the following alternative reasons: (1) This case involves consenting adults. (If this case does not involve consenting adults, reasons (2) to (4) apply.) (2) This Court has the power to decide the constitutionality of a statute on its face without regard to the conduct of the litigants. (3) The fundamental constitutional rights involved give this Court the power to rule upon the constitutionality of the statute. (4) A defendant can assert the rights of consenting adults who are unable to assert their own rights, even if the defendant is not a member of that group.

Our Brother Hendley believes that this Court should not decide the constitutionality of § 40A–9–6 when that issue was not raised or briefed by the litigants on appeal. In his dissent, he cites *Huey v. Lente*, 85 N.M. 597, 514 P.2d 1093 (1973). That case, however, does not support his position.

*Huey* holds: (1) Where *the same holding can be reached* either by declaring a statute unconstitutional or by upholding the statute, the court's decision should uphold the statute; and (2) where a statute is susceptible to two constructions, one upholding it and the other declaring it void on

constitutional grounds, the court should uphold the statute.

However, in the case at bar, we are not confronted with the *Huey* holding. We have found no grounds on which to overturn defendant's sodomy conviction, apart from constitutional grounds; nor does the dissent suggest any. We are unable to read the statute in any way that would exclude the conduct of consenting adults to preserve the statute's constitutionality. Nor does the dissent suggest a reading to preserve its constitutionality. The *Huey* holdings are, therefore, inapplicable to the instant case.

Judge Hendley objects, in principle, to the policy of deciding an issue *sua sponte,* on appeal, without briefing on that issue by the litigants. Most courts, however, do not balk to *sua sponte* resolution of important legal questions.

Two notable examples are: *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), in which the Supreme Court overruled a long-standing rule when it held that the substantive law of the state of trial must be applied in diversity cases; and *Kilberg v. Northeast Airlines, Inc.,* 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961), in which the Court of Appeals of New York announced that New York would no longer follow the law-of-the-place-of-the-tort rule in conflicts of law cases. In each case, the dissent emphasized that the question decided by the majority had not been placed before the court by the litigants. Nonetheless, a strong majority in both cases rejected that as a reason not to decide the question.

Judge Albert Tate, Jr., of the Louisiana Court of Appeals, later on the Supreme Court, has suggested that courts will decide an issue *sua sponte* for reasons of law-development and judicial administration. If the majority of the members of a court believe a rule to be the correct one, it makes little sense not to enunciate that rule so as to perpetuate an incorrect rule, only because the litigants failed to see the issue.

Courts often have more interest in making correct rules of law. They have more opportunity to properly research the issues than appellate lawyers who are pressed by demands on time and work efforts of their law practices. See A. Tate, Jr., Sua Sponte Consideration on Appeal, 9 Trial Lawyers Jour. 68 (1970).

The dissent seems to say that our bone of contention lies in *defendant's standing to raise* the constitutional question. However, standing is not involved here, and is referred to in this opinion only by analogy, because defendant never did raise the question. Rather, the authorities cited make this appeal a proper forum in which to decide whether the sodomy statute is unconstitutional on its face, regardless of the astuteness of defendant's lawyers in seeing the issue.

■ We follow Justice Parker in holding that the question of the statute's constitutionality determines whether or not this defendant has committed a crime.

. . . [T]he question of the constitutionality of the act involved determines whether a crime has been committed. If the law is void, no crime has been committed and none can be committed under it . . . ..

*State v. Diamond,* 27 N.M. 477, 488, 202 P. 988, 993, 20 A.L.R. 1527, 1535 (1921).

(2) *Section* 40A–9–6, *on its face, invades the constitutionally-protected right to marital privacy.*

Legislative prohibitions in this country against sodomy arose from the eighteenth century belief that any sexual act not leading to procreation was sinful. *United States v. Brewer,* 363 F.Supp. 606 (M.D. Pa.1973). This belief had roots in the Judeo-Christian heritage, which treated sodomitic acts as an "abomination".

Thou shalt not lie with mankind, as with womankind; it is abomination. And thou shalt not lie with any beast to defile thyself therewith; neither shall any woman stand before a beast, to lie down

thereto; it is perversion. Leviticus 18:22–23. See, also, Genesis 19:5–8.

On the cultural and historical roots of anti-sodomy legislation, see the citations in the Appendix to the dissent in *State v. Trejo, supra.*

Today, however, in contradistinction to the rationale behind legislation by which the state regulates sexual conduct, our law recognizes a constitutionally-protected right to marital privacy. This right lies within the zone of privacy created by constitutional guarantees in the First, Fourth and Fifth Amendments. *Griswold, supra.* The right to marital privacy is protected by the Ninth Amendment. Id. (Goldberg, J., concurring). It is a right that is "implicit in the concept of ordered liberty". *United States v. Doe, supra; Roe v. Wade, supra.* See, also, *United States v. Orito,* 413 U.S. 139, 142, 93 S.Ct. 2674, 37 L.Ed. 2d 513, 517 (1973).

■ Section 40A–9–6 regulates the sexual relations of a married couple. In so doing, it invades the constitutionally-protected right of marital privacy. In accord are: *Cotner v. Henry,* 394 F.2d 873 (7th Cir. 1968); *United States v. Brewer, supra; Buchanan v. Batchelor,* 308 F.Supp. 729 (N.D.Tex.1970), vacated on other grounds *sub nom; Commonwealth v. Balthazar,* 318 N.E.2d 478 (Mass.1974); *State v. Lair,* 62 N.J. 388, 301 A.2d 748 (1972). *Contra, People v. Baldwin,* 37 Cal.App.3d 385, 112 Cal.Rptr. 290 (Ct.App. 4th Dist. 1974); *State v. Temple,* 192 Neb. 442, 222 N.W.2d 356 (1974).

.The import of the *Griswold* decision is that private, consensual, marital relations are protected from regulation by the state through the use of a criminal penalty. *Cotner v. Henry, supra,* 394 F.2d at 875.

(3) *The Fourteenth Amendment extends constitutional protection from governmental interference with their sexual relations to unmarried, consenting adults.*

■ Constitutional protection from governmental interference with sexual relations of married couples must extend also to unmarried, consenting adults. To allow the Legislature to regulate sexual practices between *unmarried* consenting adults, but not between *married* persons, would be to deny equal protection of the laws to the former, contrary to the Fourteenth Amendment. *Eisenstadt v. Baird, supra; People v. Johnson,* 77 Misc.2d 889, 355 N.Y.S.2d 266 (City Ct., Buffalo, 1974). In accord are: *Balthazar, supra; Brewer, supra.* Contra are: *Lair, supra; Baldwin, supra.*

The question is . . . whether there is any logical basis on which the status of marriage between the participants should make the difference between right and wrong in the engaging in one mode of sexual intercourse rather than another. This Court believes there is no such logical basis, for the simple reason that all the arguments that have ever pertained to the prohibition of "deviate" forms of intercourse prohibited by [the New York statute] have pertained irrespective of the marital status of the participants. The subject statute would make criminals of some citizens, but not others, on the basis of an unsupportable distinction and would constitutionally wrongfully deny to the former the equal protection of the law. *People v. Johnson, supra,* 355 N.Y.S.2d at 267.

In *Eisenstadt, supra,* the Supreme Court stated:

[T]he marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with a separate intellectual and emotional makeup. If the right of privacy means anything, it is the right of the *individual,* married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. [Emphasis by the Court]. 405 U.S. at 453, 92 S.Ct. at 1038, 31 L.Ed.2d at 362.

(4) *Section 40A–9–6 unconstitutionally invades the privacy of the home.*

█ The reach of the sodomy statute to the sexual conduct of consenting adults makes it unconstitutional on yet another ground. The statutory language makes no distinction as to *place.* Sodomitic acts committed both in public and in private may constitute the crime. Accordingly, the sodomy statute regulates the sexual conduct of consenting adults *in the home,* where sexual activity is centered in our society. In reaching into the home, the statute invades a constitutionally-protected zone of privacy—the privacy of the home.

> [T]hroughout the English-speaking world . . . a most fundamental aspect of "liberty," [is] the privacy of the home . . . .. *Poe v. Ullman, supra* (Harlan, J., dissenting), 367 U.S. at 548, 81 S.Ct. at 1780, 6 L.Ed.2d at 1022.

If there is any area of human activity to which a right to privacy pertains more than any other, it is the home. The importance of the home has been amply demonstrated in constitutional law. *Ravin v. State, supra,* 537 P.2d at 503. For recent statements by the United States Supreme Court that affirm the protection afforded by the Constitution to activities conducted within the home, see: *Griswold, supra; Stanley v. Georgia, supra; Paris Adult Theatre I, supra; United States v. Orito, supra.*

(5) *The power to prohibit sodomitic conduct between consenting adults does not fall within the police power of the State.*

█ The fatal flaw in the sodomy statute is that it invades constitutionally-protected areas. When it reaches this far, it cannot be validated simply by a showing that it accomplishes a purpose that is within the police power of the State.

> Such a law cannot stand in light of the familiar principle, so often applied by this Court, that a "governmental purpose to control or prevent activities constitu-
tionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *NAACP v. Alabama,* 377 U.S. 288, 307, 84 S.Ct. 1302, 12 L.Ed.2d 325, 338.

*Griswold, supra,* 381 U.S. at 485, 85 S.Ct. at 1682, 14 L.Ed.2d at 515–16.

> In a long series of cases this Court has held that where fundamental personal liberties are involved, they may not be abridged by the States simply on a showing that a regulatory statute has some rational relationship to the effectuation of a proper state purpose. "Where there is a significant encroachment upon personal liberty, the State may prevail only upon showing a subordinating interest which is compelling." *Bates v. Little Rock,* 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480, 486.

*Griswold, supra* (Goldberg, J., concurring), 381 U.S. at 497, 85 S.Ct. at 1688, 14 L.Ed. 2d at 523. See also, *Buchanan, supra.*

We have found nothing in judicial opinions dealing with sodomy statutes which suggests that a compelling necessity to regulate sexual conduct between consenting adults overcomes this statute's violation of constitutionally-protected rights. See, W. Barnett, Sexual Freedom And The Constitution (1973), for the most effective attack on the rationale behind sodomy statutes and other types of oppressive legislation dealing with sexual conduct.

Furthermore, we agree with Chief Justice Rabinowitz, of the Supreme Court of Alaska, that the cases support the "general proposition that the authority of the state to exert control over the individual extends only to activities of the individual which affect others or the public at large as it relates to matters of public health or safety, or to provide for the general welfare. We believe this tenet to be basic to a free society." *Ravin v. State, supra,* 537 P.2d at 509. The sections of the Criminal Code of New Mexico that regulate sexual conduct other than sodomy [§§ 40A–9–1 to 40A–9–

19, N.M.S.A.1953 (2d Repl. Vol. 6)] can all be validated under *this* general proposition. The sodomy statute, reaching consensual acts between adults and conducted within the home, cannot be so validated.

(6) *Holding as to § 40A–9–6*

■ We hold that the New Mexico sodomy statute, § 40A–9–6, is unconstitutional on its face. Appellant's conviction under § 40A–9–6 is void.

(7) *The New Sodomy Statute*

■ In the last legislative session, the New Mexico Legislature repealed § 40A–9–6, and enacted in its place a statute that restricts the State's regulation of sodomitic conduct to that accompanied by force or coercion. New Mexico Laws, 1975, ch. 109 (32nd Legislature, 1st Session). The new law overcomes the constitutional flaws of § 40A–9–6.

B. *The evidence is insufficient to sustain the charge of burglary.*

Burglary of a dwelling house is defined by § 40A–16–3(A) as the entry into a home without authorization and with intent to commit any felony or theft therein.

The question to decide is whether defendant entered the home of the prosecutrix without authorization and with intent to commit rape.

The uncontradicted testimony of the prosecutrix absolves the defendant. She testified that she held a drink and dance party at her house from midnight until 4:30 a. m., to which affair defendant was invited. Defendant first came around midnight, and then left, returning at 2:00 a. m. He then left again, this time with the prosecutrix, to get cokes. He returned and stayed until 4:30 a. m. and left once more to take the party guests home.

The prosecutrix latched the door and went to bed. She had barely dozed off when she awoke to hear a car pulling into the driveway. She heard someone knock at the door two or three times and then heard a hard banging on the door. She looked out of the bedroom door and saw

the defendant "standing right inside the livingroom." She demanded that he leave, but he said that the co-hostess "had sent him back over there and told him we were going to have another party and he wanted to party some more." He was drunk. They stood at the door and talked. They then sat down and talked some more, and after some period of time the claimed acts of sodomy and rape occurred.

(1) *Authorization*

■ The prosecutrix failed to testify that defendant did not have permission to enter her house. The State failed to establish that defendant's entry was unauthorized. *State v. Slade,* 78 N.M. 581, 434 P. 2d 700 (Ct.App.1967). See, *State v. Garcia,* 80 N.M. 247, 453 P.2d 767 (Ct.App. 1969).

(2) *Specific Intent*

■ "[A] specific intent to commit a felony . . . is an essential element of the state's case to be proved beyond a reasonable doubt. The gravamen of the offense of burglary is ·the intent with which the [home] is entered." *State v. Ortega,* 79 N.M. 707, 708, 448 P.2d 813, 814 (Ct.App.1968). This specific intent must exist and may be measured at the time of the claimed unauthorized entry into the home of the prosecutrix. *People v. McCombs,* 94 Ill.App.2d 308, 236 N.E.2d 569 (1968). "If the intent relied upon by the state was formed after the entry, the crime of burglary is not shown." *Conrad v. State,* 154 Tex.Cr.R. 624, 230 S.W.2d 225, 226 (1950).

■ When we speak of specific intent to commit rape, we mean specific intent to have sexual intercourse, without the female's consent, which intent exists at the time that the defendant enters the home. Such intent must be proved by evidence or inference reasonably deducible therefrom. See *People v. Tidmore,* 218 Cal.App.2d 716, 32 Cal.Rptr. 444 (1963). *Taylor v. Commonwealth,* 207 Va. 326, 150 S.E.2d 135 (1966). No such evidence appears in the record.

Defendant was acquitted of rape. The prosecutrix testified that she engaged in sexual intercourse with him. That testimony, along with defendant's acquittal strongly suggests that the jury found that sexual intercourse took place with the consent of the prosecutrix and that he did not enter her home with intent to commit rape. In *People v. McCombs, supra,* the court said:

> . . . [I]f a review of the evidence and a consideration of the entire record leaves us with a grave and serious doubt of the guilt of the accused, it is our duty to reverse the judgment. [Citations omitted]. The record before us does little more than raise a suspicion of the defendant's guilt, and the judgment of conviction cannot be allowed to stand. 236 N.E.2d at 571.

See also, *Easton v. State,* 248 Ind. 338, 228 N.E.2d 6 (1967); *Reed v. State,* 7 Md. App. 200, 253 A.2d 774 (1969); *State v. Rood,* 11 Ariz.App. 102, 462 P.2d 399 (Ct. App. 1969); *Hutton v. People,* 177 Colo. 448, 494 P.2d 822 (1972).

The convictions are reversed and defendant is discharged.

It is so ordered.

LOPEZ, J., concurs in the results only.

HENDLEY, J., dissents.

HENDLEY, Judge (dissenting).

I dissent. I do not feel that this is a proper case in which to adjudicate the constitutionality of the sodomy statute, § 40A–9–6, N.M.S.A.1953 (2d Repl. Vol. 6 1972).

First, neither trial counsel or appellate counsel raised the constitutionality of the statute. This is a *sua sponte* action by the majority. It is, at best, a blatant abuse of judicial power. If for no other reason my dissent would stand upon this ground alone. *Huey v. Lente,* 85 N.M. 597, 514 P.2d 1093 (1973). To decide so serious an issue, without benefit of briefing by the parties makes light of the adversary system —the very foundation of our form of jurisprudence.

Second, even had the defendant requested standing to raise the issue of the constitutionality of the statute (which he did not), time-honored principles of law would mandate the result that defendant has no such standing. The majority assign four reasons for giving defendant such standing: (1) the case involves consenting adults, (2) consenting adults are unable to assert their own rights, (3) the statute is unconstitutional on its face, and (4) fundamental rights are involved.

(1) The case does not involve consenting adults. The record is not ambiguous on the issue of mutual consent. The prosecutrix testified that the defendant *forced* her, under threat of injury and against her will, to perform three acts of oral sodomy and one act of anal sodomy. The fact that the jury acquitted the defendant of the rape charge did not mean that the jury found that the prosecutrix consented to the sodomy. The jury may have thought that she was willing to perform normal sexual intercourse but not deviant sexual intercourse. The jury may have thought that the punishment for five third degree felonies would be sufficient without adding the punishment for a second degree felony. The jury is only answerable to its own conscience. It is settled law in this jurisdiction that appellate courts will not speculate and look behind jury verdicts in criminal cases. *State v. Leyba,* 80 N.M. 190, 453 P.2d 211 (Ct.App.1969). Yet this is exactly what the majority has done. By this magic but forbidden formula they have given the defendant standing under the first assigned reason.

(2) The exception to the standing rule whereby persons who admittedly have standing are unable to assert their rights is inapplicable to the case at bar. The reason for its inapplicability is that the exception is a qualified one. It has been consistently held that the person asserting the rights of others must have some relationship to

those others. In *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) and *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), the persons held to have standing stood in a professional or helping relationship to those unable to assert their rights. Moreover, in *Eisenstadt*, the parties whose rights were being asserted were not subject to criminal liability at all. In *United States v. Doe*, 12 Cr.L. 2531 (D.C.Sup.Ct. 1973), the persons asserting the rights of others had at least some common traits with them. There consenting adults were asserting the rights of other consenting adults. The same cannot be said here. My Brothers Sutin and Lopez may, by their opinion, have allowed one who has forcibly sodomized a child to assert the rights of consenting married adults. No relationship between defendant and those whose rights he is asserting having been shown of record, I would hold defendant ineligible to raise the issue of the statute's unconstitutionality on behalf of the world-at-large due to the majority's second assigned reason.

(3) and (4) The exceptions to the standing rule involving facial unconstitutionality and fundamental rights are not entirely separate. Both the majority opinion and *United States v. Doe, supra*, upon which the majority rely, are grounded in the cases of *Coates v. Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) and *Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). Historically, the procedure of declaring a statute unconstitutional without regard to the conduct of the individual litigant has been reserved for those special instances where the allegation of unconstitutionality consists of a due process claim of vagueness in combination with a violation of the First Amendment right of free speech or assembly, (see *Coates v. Cincinnati, supra; Baggett v. Bullitt, supra*), or perhaps where the statute in question has already been declared unconstitutional in the vast majority of its applications. See *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed. 2d 524 (1960). The statute herein declared unconstitutional is scrupulously specific in its language and has nothing whatsoever to do with freedom of expression. Compare *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L. Ed.2d 179 (1973). Further, it would be constitutional in the vast majority of its applications and the authorities cited in the majority opinion have only held similar statutes unconstitutional as applied to the single class of consenting, married adults committing the forbidden acts in private. Thus, these exceptions to the standing rule would be inapplicable.

Thirdly, the stretching of the instant case to a discussion of the right to marital privacy is a distortion of the first order.

To my mind, what we have here is a case where defendant was convicted of four counts of sodomy and one count of burglary. He appealed. His counsel very ably alleged points for reversal, which, in my opinion, would have resulted in a reversal and discharge on the burglary count (although for different reasons than those stated in the majority opinion) and a reversal and remand on at least three of the four sodomy counts due to inadequacies in the information. What the majority has done is wholly unnecessarily pulled an issue out of thin air and without even giving the state an opportunity to respond to it, decided the constitutionality of a statute whose constitutionality has never in this litigation been called into question. It has always been the policy of the courts to avoid, if possible, constitutional issues. *Huey v. Lente, supra*. Under principle and authority defendant has no standing to assert the issue of constitutionality in any event.

I dissent.