487 P.2d 484

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Melvin BETSELLIE, Defendant-Appellant.**

**No. 9200.**

Supreme Court of New Mexico.

July 26, 1971.

David ·L. Norvell, Atty. Gen., Ray H. Shollenbarger, Jr., Sp. Asst. Atty. Gen., Albuquerque, for appellee.

Thomas J. Hynes, Farmington, for appellant.

## OPINION

OMAN, Justice.

Defendant was convicted of first degree murder and sentenced to life imprisonment. He has appealed. We affirm.

The first issue to be decided arises upon a motion for remand of the case to the trial court for the purpose of passing on a motion for a new trial. Subsequent to the perfection of his appeal, defendant, through the diligence of his court-appointed attorney, secured affidavits of recantation from the two witnesses who had placed decedent and defendant together at or near the death scene and had testified to matters otherwise linking defendant with the killing of decedent.

One of these witnesses, Nora, who was 18 years of age, identified defendant in open court. She testified positively on more than one occasion, during both the direct and cross-examination of her, that she saw defendant push decedent off a cliff into some rocks. She also testified defendant tried to push her, Nora, over the cliff; she was afraid of defendant, but not while in the courtroom; and she was telling the truth as to what happened and what she saw.

It is apparent from a reading of her testimony and her affidavit, that the language of the affidavit, at least in part, is not her language, but that of someone else. By this observation we do not mean to suggest that she did not sign the affidavit, or that she may not have in effect said what is contained in the affidavit. However, the language used is not consistent with her manner and ability of expression, and there is doubt as to her ability to understand some of this language. In the affidavit she states in part:

"I testified to having seen the defendant push the decedent from the cliff after having been told by various members of the San Juan County Sheriff's Department that they would put me in jail if I did not so testify.

"During the course of the trial I attempted to tell the truth and relate to the Court the true events of the evening in question. The Assistant District Attorney requested a recess and during the recess threatened me with jail unless I testified that I saw Melvin Bitsellie push Arlene Etcitty from the cliff. Upon returning to the Court I testified as I had been instructed.

"I wish now to tell the truth about the events of the evening in question and to make it clear that at no time did I see Melvin Bitsellie or anyone else push Arlene Etcitty from a cliff.

"I make this statement of my own free will without duress or threat of any kind and do so with a desire to see that justice is done."

Her affidavit is not only inconsistent with her sworn testimony in court but is positively refuted by the record in at least one important part. The Assistant District Attorney did not request a recess, and no recess was requested by anyone or taken by the court during the time she was testifying. The record does support her claim of attempt " * * * to tell the truth about the events of the evening in question * * *" and it also clearly suggests to us that this is what she did. In any event, the jury heard her testimony and observed her demeanor while testifying, and they

apparently accepted it as being substantially, if not entirely, consistent with the truth.

The other of the two witnesses who gave an affidavit is Anita, who was also 18 years of age. Her testimony supported that of Nora as to their presence and the presence of defendant, decedent, and another young woman near the death scene, the dragging or forcing of decedent by defendant after they left defendant's automobile, the absence of Nora, defendant, and decedent from the automobile for some time, the return to the automobile of Nora quite some time before the return of defendant, and the failure of decedent to return to the automobile.

On cross-examination by defendant's attorney, she first repeated her testimony as to the events leading to her presence on the "bluffs," the death scene. Upon being reminded by defense counsel that she had told him she " * * * had nothing to do with that night," she promptly denied she was present, denied having seen defendant that day, and stated she had made "the story up."

On re-direct examination she was asked why she was changing her story, and her answer was: "Because Nora told me to say that."

Upon the conclusion of her testimony the court recessed for noon. After the noon recess the court announced that during the recess counsel had talked to Anita, and that she had then approached the court and requested an opportunity to tell her story. The court then asked her to tell the jury " * * * what, if anything, you know about what happened on December 27, 1969, all during that day and evening."

She thereupon told the same story she had originally told on direct examination. The court asked her if this was the truth, and she replied in the affirmative. She was asked why she had not told the truth earlier and her reply was: "Because I was scared of Melvin Betsellie." When asked if there was a reason for her being scared of him, she answered: "He said he might beat up my face." This threat was made by defendant right after the preliminary hearing at which she had testified. She also said she was still afraid of defendant.

In her affidavit she stated her testimony " * * * to the effect that [she] witnessed Melvin Betsellie push Iliene Atcitty off of a hill on December 27, 1969," was false, and that she " * * * did not witness any of the acts which [she] testified to." She gave as her reason for so testifying that she " * * * was threatened by the Sheriff's Department of San Juan County with one year in prison if [she] did not testify against Melvin Betsellie." She also stated she " * * * did not see nor talk to Melvin Betsellie * * *" on December 27, 1969.

Defendant relies upon State v. Fuentes, 66 N.M. 52, 342 P.2d 1080 (1959) as supporting his motion for remand of the case to the trial court.

We very much agree that a defendant should be granted a new trial if perjury of a material witness against him is later discovered. However, we also realize and agree courts must act with great reluctance and with special care and caution before accepting the truth of a claim of perjury, and should properly require the evidence to affirmatively establish the perjury in such clear and convincing manner as to leave no room for reasonable doubt that perjury was committed. We are not satisfied as to the truth of the affidavits here presented. The circumstances are such as to impel us to a belief in the truth of the testimony given by the witnesses at trial that defendant was at the death scene and did behave toward decedent in the manner described by the witnesses. Under the circumstances we are of the opinion we cannot properly remand the case to the trial court for hearing on a motion for a new trial.

Defendant's first point relied upon for reversal of his conviction is his claim that the conviction is not supported by substantial evidence. This claim is predicated primarily upon the fact that no witness saw defendant push or otherwise cause

decedent to fall from the cliff at the base of which her body was found, or saw defendant and decedent in the immediate vicinity of the top of that cliff. However, the following are some of the facts which are supported by substantial evidence: (1) the body was found about 12 or 15 feet downhill and away from the base of a 120 foot vertical cliff; (2) it is about 160 feet up a gentle incline from the top of this cliff to another vertical cliff 16 feet in height; (3) at the base of this smaller cliff are some large rocks; (4) defendant was seen to push decedent from the top of this smaller cliff, and she landed on her head in these rocks; (5) she sustained a fractured neck and skull which were compatible with this fall, and from which injuries she would have died; (6) at this time the witness left the scene and returned to defendant's automobile where Anita and the other young woman were waiting; (7) decedent was not then dead; (8) defendant at that time was at the top of the cliff from which he had pushed decedent; (9) the investigating officers found a set of tracks leading from the top of the cliff to the place where decedent was lying, and two sets of tracks in that area; (10) defendant returned alone to the automobile some 30 or 40 minutes later; (11) when asked about decedent, defendant stated she had decided to walk to town; (12) decedent was wearing trousers and the pockets therein were turned inside out when her body was found; (13) in addition to the fractured neck and skull, decedent had also sustained fractures of both ankles and left femur, and massive fractures of the chest; (14) the fractures of her ankles, femur and chest were compatible with a fall of 120 feet; (15) she was still alive when she fell from the 120 foot cliff; (16) decedent's body had landed a few feet away from the base of the 120 foot vertical cliff, which was inconsistent with an accidental fall over the edge of this cliff.

■ Defendant suggests that under these circumstances, it is mere surmise or conjecture to find him responsible for the death. We disagree. In passing on the question of whether there was substantial evidence to support a verdict of conviction, we view the evidence in the light most favorable to the State, resolving all conflicts therein and indulging all reasonable inferences therefrom in favor of the verdict. State v. Lopez, 79 N.M. 282, 442 P.2d 594 (1968); State v. Parker, 80 N.M. 551, 458 P.2d 803 (Ct.App.1969).

Defendant next contends his conviction was based on circumstantial evidence which did not point unerringly to his guilt and which did not exclude every reasonable hypothesis other than his guilt. He relies upon the case of State v. Ford, 80 N.M. 649, 459 P.2d 353 (Ct.App.1969).

■ Defendant must fail in this contention. The State did not rely upon circumstances alone. As shown above, there were witnesses to his being with decedent in the close vicinity of the place where she met her death, and an eye-witness to his pushing her off the first cliff. Because the medical evidence was to the effect that she was still alive when she landed at the foot of the second cliff, and no one saw defendant shove or throw her off this cliff, defendant contends this makes the evidence of the death entirely circumstantial, and that other reasonable hypotheses as to how her body reached that point are: (1) "* * * the victim, unharmed after she was allegedly pushed over the first incline by the defendant, arose and wandered off of the second cliff;" or (2) "* * * a third and unknown party happened upon the victim and that that party was responsible for pushing the victim off of the second cliff."

As already stated, the evidence clearly is not entirely circumstantial. The following evidence is such as to make the first suggested hypothesis unreasonable: (1) defendant became angered with decedent and was dragging her before they reached the top of the first cliff; (2) decedent was pushed or thrown by defendant from this first cliff; (3) although she did not die immediately of the injuries sustained by

her in this fall, she did sustain injuries compatible with this fall which would, and perhaps did, cause her death; (4) the distance her body landed from the foot of the second cliff was inconsistent with her wandering and falling off that cliff; (5) the pockets of her trousers were turned inside out; (6) a set of tracks led from the area on top of the first cliff from which defendant pushed decedent to the area where she landed in the rocks; (7) defendant did not return to his vehicle for 30 or 40 minutes; (8) when he did return, decedent was not with him; and (9) when asked about decedent, defendant stated she had decided to walk to town.

The second suggested hypothesis is at least equally unsupported by reason. This hypothesis is dependent upon a chance discovery of decedent in her injured condition in a somewhat remote and isolated area by some unknown person, who, for no known reason, assisted her to the top of the second cliff solely for the purpose of pushing her to her death.

Defendant finally urges that the trial court "* * * in examining Anita * * * subsequent to her original testimony, adopted her as the court's witness and unduly prejudiced the jury against defendant." He relies upon the following language from State v. Sedillo, 76 N.M. 273, 414 P.2d 500 (1966):

"A trial judge must at all times be judicious. He must not, by undue participation in the examination of witnesses, or by other conduct, convey to the jury that he favors one side or the other, and must not convey to the jury what he thinks the verdict should be. Because of his power and influence, and because of the tendency of the jury to place great emphasis upon what he says and does,· the trial judge must be most careful not to say or do anything which would add to a party's burdens of proof, or detract from the presumptions to which a person charged with crime is entitled."

We reaffirm this statement as to the attitude and course of conduct a trial court must adopt and follow, but we also reaffirm the following, which is also contained in our opinion in the Sedillo case:

"A trial judge is more than a mere umpire or moderator, and he may properly propound questions to the witnesses, so long as he keeps the same within the bounds demanded of him by his position as trial judge, and so long as he displays no bias against or favor for either of the litigants. * * *"

Here the parties stipulated that Anita could be called to the witness stand and questioned. No objection was made to any of the court's questions, which were as above indicated. In any event, we are unable to find anything done or said by the court in questioning the witness which indicates any impropriety on the part of the trial court or which displayed any bias against defendant or favor for the State or its position.

The judgment and sentence should be affirmed.

It is so ordered.

COMPTON, C. J., and STEPHENSON, J., concur.