494 P.2d 173

**STATE of New Mexico, Plaintiff-Appellee,**
**v.**
**Salvador TREJO, Defendant-Appellant.**
**No. 748.**

Court of Appeals of New Mexico.

Feb. 4, 1972.

Asa Kelly, Jr., Silver City, for appellant.

David L. Norvell, Atty. Gen., Prentis Reid Griffith, Jr., Asst. Atty. Gen., Santa Fe, for appellee.

OPINION

WOOD, Chief Judge.

Defendant was convicted of attempting to commit a felony. Section 40A–28–1, N. M.S.A.1953 (Repl.Vol. 6). The felony was sodomy. Section 40A–9–6, N.M.S.A.1953 (Repl.Vol. 6). His appeal asserts: (1) a lack of substantial evidence to sustain the conviction and (2) a denial of effective assistance of counsel. This case involves a forcible attack upon a minor.

512

*Substantial evidence.*

In determining whether there was substantial evidence to support the verdict we view the evidence in the light most favorable to the State, resolving all conflicts in the evidence and indulging all reasonable inferences in favor of the verdict. State v. Betsellie, 82 N.M. 782, 487 P.2d 484 (1971); State v. Sedillo, 82 N.M. 287, 480 P.2d 401 (Ct.App.1971).

Applying this rule, the evidence is as follows. On August 22, 1969, the complaining witness, sixteen year old Ronald Hernandez, was at a drive-in movie near Central, New Mexico with some friends. He left their car and went to the refreshment stand where he met the defendant. Ronald was acquainted with the defendant as the defendant was married to Ronald's cousin. Defendant agreed to take Ronald to Silver City where Ronald's grandmother lived.

After getting into defendant's car, the defendant offered Ronald a dollar if Ronald would " * * * let him screw me." When Ronald refused the defendant said he was " * * * going to screw me [Ronald] or else." Defendant then grabbed Ronald, held him, covered his mouth and drove out of the movie onto a back road and stopped. Defendant then threw Ronald into the back seat and punched and slapped Ronald "real hard" until Ronald passed out. " * * * [W]hen I [Ronald] came to I was partly naked and I was struggling and my trousers were already off and he took everything off and he begin [sic] to kick me * * *." During the struggle defendant was on top of Ronald with his arms around him. During the course of these events the fly on defendant's pants was open.

Shortly thereafter Ronald escaped, and ran naked, to a nearby house.

The owner of the house testified that Ronald was nude except for a pair of socks; that he was " * * * hysterical, crying, terrified * * *;" that he had a " * * * big bruise on the [sic] side of his face * * * bruise marks on his throat and he was * * * spitting a little bit of blood from his teeth. * * *" Other witnesses gave similar descriptions of Ronald's appearance that night.

The defendant was apprehended shortly thereafter on the road Ronald indicated he had taken. Ronald's clothes were found by the side of the road approximately one-half mile from where the attack occurred.

An attempt to commit a felony is defined as consisting " * * * of an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission." Section 40A-28-1, supra. The overt act must be more than preparation; it must be in part execution of the intent to commit the crime. However, slight acts in furtherance of that intent will constitute an attempt. State v. Lopez, 81 N.M. 107, 464 P.2d 23 (Ct.App. 1969); see also State v. Bereman, 177 Kan. 141, 276 P.2d 364 (1954).

We found no New Mexico decisions which consider what acts are sufficient to constitute attempted sodomy. Generally, however, see United States v. Kelly, 119 F. Supp. 217 (D.C.1954); State v. Smith, 137 Mo. 25, 38 S.W. 717 (1897); State v. Verganadis, 50 Nev. 1, 248 P. 900 (1926); Garrad v. State, 194 Wis. 391, 216 N.W. 496 (1927).

In Anderson v. State, 75 Ga.App. 643, 44 S.E.2d 178 (1947), the defendant's conviction for attempted sodomy was upheld on evidence that the defendant had enticed the prosecutrix into his car by promising to take her home. Defendant then drove out onto a deserted road and told the prosecutrix to "take his privates in [her] mouth." The prosecutrix refused and defendant took her from the car and beat her until she passed out. The court stated:

" * * * the jury were authorized to find that the defendant failed in the perpetration of the commission of the crime of sodomy because the prosecutrix refused to take his private parts in her mouth when ordered by him so to do, and that the acts of the defendant in taking the prosecutrix out of the car and beating her were acts done in pursuance

of his intent to commit sodomy, *and directly tending to the commission of the crime.*" [Emphasis added.]

In State v. LeMarr, 83 N.M. 18, 487 P. 2d 1088 (1971), the defendant was convicted of being an aider and abettor to an attempted rape. The evidence of the attempted rape was that the principal had ripped off the victim's shirt and had attempted to remove her pants.

█ The acts of the defendant herein constituted an active effort to consummate the crime and were more than mere preparation. In addition, defendant's announced intention to "screw" Ronald, and his activities following that announcement, are evidence that defendant intended to commit sodomy. See State v. Nelson, 83 N.M. 269, 490 P.2d 1242 (Ct.App.1971). There is substantial evidence to sustain the conviction.

*Effective assistance of counsel.*

█ Defendant contends he was denied effective assistance of counsel. All of his claims go to trial tactics and strategy. Even if the tactics could be considered bad, or the strategy considered improvident (which we do not hold), they would not amount to a denial of effective assistance of counsel. State v. Ramirez, 81 N.M. 150, 464 P.2d 569 (Ct.App.1970). A conviction is not to be reversed on a claim of ineffective assistance of counsel unless the proceedings leading to his conviction amount to a sham or farce or a mockery of justice. State v. Tapia, 80 N.M. 477, 457 P.2d 996 (Ct.App.1969). That is not the situation in this case.

Defendant's specific claims, and the decisions adverse to those claims are: (1) failure to call defendant as a witness—Barela v. State, 81 N.M. 433, 467 P.2d 1005 (Ct. App.1970); State v. Ramirez, supra; (2) failure to object to certain instructions and a failure to request other instructions— State v. Samora, 82 N.M. 252, 479 P.2d 532 (Ct.App.1970); and (3) asserted deficiencies in counsel's cross-examination—Barela v. State, supra.

The judgment and sentence are affirmed.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, J., dissenting.

SUTIN, Judge (dissenting).

I dissent. The sodomy statute, § 40A–9–6, N.M.S.A.1953 (Repl.Vol. 6), is unconstitutional and void because it regulates private sexual relations between two consenting adults, including husband and wife, both of which adults may be principals. "Force is not an element of the crime." Washington v. Rodriguez, 82 N.M. 428, 483 P.2d 309 (Ct.App.1971).

The Model Penal Code of the American Law Institute, 1962, § 213.2 suggests a proper sodomy statute. Thus far it has been adopted by the States of Connecticut (Conn.Gen.Stat. § 53a–65 et seq., particularly §§ 53a–75, 53a–76, 53a–77 [1958 Rev. 1969 Supp.], as amended, 1971 Conn.Public Acts, P.A. 871, §§ 19, 127, 128), Idaho (Idaho Session Laws 1971, ch. 143, § 1, ch. 9, § 18–901 et seq.), Colorado (Session Laws of Colo.1971, ch. 121, §§ 40–3–403 through 40–3–406, 40–3–410, effective July 1, 1972), and Oregon (Oregon Laws 1971, ch. 743, Art. 13, §§ 104–120). It was adopted partially by the State of New York (Penal Code, McKinney's Consol. Laws, c. 40, § 130.00 et seq.), and Illinois (Ill.Rev.Stat. ch. 38, § 11–1 et seq. [1967 Comp.]). Minnesota has amended its sodomy statutes to provide a lesser penalty for consensual acts. See Minn.Stat.1969 Comp. § 609.293. The Model Penal Code provision is being considered by other states drafting criminal codes. A sodomy statute for New Mexico has been suggested in 8 Natural Resources J. 531 at 540.

Trejo would be guilty under either suggested statute. The Model Penal Code prohibits deviant sexual intercourse only (1) when that act is accomplished through force; (2) when it involves an adult corrupting a minor; or (3) when the act is accompanied by a public offense. None of

**514**

these elements appear in the New Mexico sodomy statute.

In the last ten years many law review articles and some books have been written unanimously condemning the present statute and its antecedents. Only twenty articles have been reviewed and are set forth as an Appendix. Professor Walter Barnett of the University of New Mexico Law School is now preparing drafts of a book to be entitled "Sodomy and the Constitution" which covers this subject matter.

The present statute, suggested by the New Mexico Supreme Court in 1953, comes from Manual for Courts-Martial, U.S. Army, 1959. Bennett v. Abram, 57 N.M. 28, 253 P.2d 316 (1953).

The New Mexico sodomy statute reads as follows:

> Sodomy consists of a person intentionally taking into his or her mouth or anus the sexual organ of any other person or animal or intentionally placing his or her sexual organ in the mouth or anus of any other person or animal, or coitus with an animal. Any penetration, however slight, is sufficient to complete the crime of sodomy. Both parties may be principals.

> Whoever commits sodomy is guilty of a third degree felony.

A good treatise on the subject of sodomy can be found in Harris v. State, 457 P.2d 638 (Alaska 1969).

The New Mexico statute is unconstitutional for the following reasons:

1. It invades the right of privacy which is a right unspecified in the federal Constitution but it is a right "within the penumbra of specific guaranties of the Bill of Rights" including the IX Amendment to the Constitution of the United States. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Cotner v. Henry, 394 F.2d 873 (7th Cir. 1968); Buchanan v. Batchelor, 308 F.Supp. 729 (D.C.Texas 1970), vacated and remanded for reconsideration of the jurisdiction of the U. S. District Court to grant equitable relief, Wade v. Buchanan, 401 U.S. 989, 91 S.Ct. 1221, 1222, 28 L.Ed.2d 526. See 49 Texas L.Rev. 400 (Jan.1971); the dissents in Dixon v. State, Ind., 268 N.E.2d 84 (1971); Miller v. State, Ind., 268 N.E.2d 299 (1971).

2. The sodomy statute violates the First Amendment to the Constitution of the United States that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." This means at least that neither a state nor the federal government can set up a church, nor pass laws which aid one religion, aid all religions, or prefer one religion over another. Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L. Ed. 711 (1947), reh. den. 330 U.S. 855, 67 S.Ct. 962, 91 L.Ed. 1297 (1947).

The New Mexico sodomy statute reflects a Judeo-Christian principle with origins in Genesis 19:5–8, 24–26; Deuteronomy 23:17; Leviticus 18:22–23, 20–16. Sodomy is deemed sinful and wrongful as a matter of theology. The prohibition is religious in origin and no secular justification exists for enforcement of this religious principle beyond the areas set forth in the Model Penal Code. The legislature would not have the power to make abstinence a felony because it is a religious doctrine. Contraception is constitutional. Griswold v. Connecticut, supra.

Neither the legislature nor the courts have the power to impose with ecclesiastical fury religious principles upon ordinary, innocent adults. For example, in Berryman v. State, 283 P.2d 558, 563 (Okl.Cr. 1955), the court said the statute is not explicit because "the very alleged sexual behavior is such as should not be described among *Christians*." [Emphasis added.]

For decades, this subject has been considered "revolting" and "disgusting" and not subject to discussion in court opinions because of its religious nature. Sodomy does not become a criminal act until the statute inserts elements which make human conduct a crime as set forth in the Model Penal Code.

The sodomy statute is unconstitutional and void because it is vague, overbroad, uncertain, and is an unreasonable exercise of the police power of the state. See State v. Prince, 52 N.M. 15, 189 P.2d 993 (1948); State v. Dennis, 80 N.M. 262, 454 P.2d 276 (Ct.App.1969); State v. Sanchez, 82 N.M. 585, 484 P.2d 1295 (Ct.App.1971), dissenting opinion; State v. Putman, 78 N.M. 552, 434 P.2d 77 (Ct.App.1967).

In State v. Putman, supra, a dissenting opinion established that three appellate judges could not agree on whether the defendant's conduct was covered by the sodomy statute. If this uncertainty exists, a penal statute is in violation of the Fourteenth Amendment to the Constitution of the United States because it deprives a person of due process. State v. Prince, supra.

A good definition of public policy was adopted in Barwin v. Reidy, 62 N.M. 183, 307 P.2d 175 (1957). It is "uncertain and fluctuating, varying, with the changing economic needs, social customs, and moral aspirations of a people." Appellate courts should not declare public policy without " 'the clearest reasons and most pressing necessity.' "

A review of books and articles disclose many sound reasons which declare the present statute contrary to public policy. Public abhorrence of sexual deviation and private morals are not properly within the domain of the criminal law. Judge Learned Hand once wrote "Sodomy is a matter of morals * * * not something for which people should be put in prison." These deviations are widely practiced by married couples and encouraged by modern authorities on marriage. Authors of medical, psychological and sociological books, as well as members of the medical profession, are all placed in the role of advocating the commission of a felony.

No one has ever proven that the various acts involved are physically harmful between two consenting adults engaged in private sexual relations, nor that these acts have a deleterious effect on society.

Marriage contemplates a right of privacy older than the Bill of Rights, and the sanctity of this relationship must be protected from intrusion. Doesn't it seem odd that the statute allows the state to punish consenting adults for private sexual deviations, and married people for the private use of their marital intimacy even though they seek stability instead of divorce? In denying consensual private sex relations between adults, the legislature makes criminals out of a large section of ordinary, normal people in New Mexico who have left the biblical text and seek contentment under modern professional guidance. Public policy cannot sanction this type of legislation.

In Honselman v. People, 168 Ill. 172, 48 N.E. 304 (1897), in referring to sodomy, the court said, "The existence of such an offense is a disgrace to human nature." In 1961, the Illinois legislature removed private consensual sodomy from the category of crime.

In Indiana, the Supreme Court supported a plea of guilty to a charge that the defendant committed the "abominable and detestable crime against nature with a beast: to wit a chicken"!

In Perkins v. State, 234 F.Supp. 333 (W.D.N.C.1964), the judge said: "[P]utting Perkins into the North Carolina Prison system is a little like throwing Brer Rabbit into the briarpatch."

The social revolution on the subject of private consensual sexual relations between two consenting adults has begun legally in the courts and in the legislature. New Mexico should follow this trend.

## APPENDIX

Evans, et al., "The Crimes Against Nature," 16 Journal of Public Law 159 (1967).

Goodman, "The Bedroom Should not Be Within the Province of the Law," 4 Cal. West.L.Rev. 115 (1968).

Hefner, "The Legal Enforcement of Morality," 40 U.Colo.L.Rev. 199 (1968).

Hollis, "Criminal Law—Sexual Offenses—Sodomy—Cunnilingus," 8 Natural Resources J. 531 (1968).

Johnsen, "Sodomy Statutes—A Need for Change," 13 S.D.L.Rev. 384 (1968).

Jones, "Sodomy—Crime or Sin?" 12 U.Fla.L.Rev. 83 (1959).

Spence, "The Law of Crime Against Nature," 32 N.C.L.Rev. 312 (1954).

Cantor, "Deviation and the Criminal Law," 55 Journal of Criminal Law, Criminology, and Police Science 441 (1964).

Slovenko, "Sexual Deviation: Response to an Adaptational Crisis," 40 U.Colo.L.Rev. 222 (1968).

Note, 49 Tex.L.Rev. 400 (Jan.1971).

Joplin, "Criminal Law: An Examination of the Oklahoma Laws Concerning Sexual Behavior," 23 Okl.L.Rev. 459 (1970).

Foster & Freed, "Offenses Against the Family," 32 U.M.K.C.L.Rev. 33 (1964).

Lamb, "Criminal Law—Consensual Homosexual Behavior—The Need for Legislative Reform," 57 Ky.L.J. 591.

Farrar, "Constitutional Law—State Interference with Private, Consensual Marital Sexual Relations," 23 U.Miami L.Rev. 231 (1968).

Moran, "Sex Offenses and Penal Code Revision in Michigan," 14 Wayne L.Rev. 934 (1968).

Harris, "Private Consensual Adult Behavior: The Requirement of Harm to Others in the Enforcement of Morality." 14 U.C.L.A.L.Rev. 581 (1967).

Couris, "Sexual Freedom For Consenting Adults—Why Not?" 2 Pac.L.J. 206 (1971).

Fisher, "The Sex Offender Provisions of the Proposed New Maryland Criminal Code: Should Private, Consenting Adult Homosexual Behavior be Excluded?" 30 Md.L.Rev. 91 (1970).

Ploscowe, "Report to the Hague: Suggested Revisions of Penal Law Relating to Sex Crimes and Crimes Against the Family." 50 Cornell L.Q. 425 (1965).

Note, "Deviate Sexual Behavior Under the New Illinois Criminal Code," 1965 Wash.U.L.Q. 220.