This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41156

**STATE OF NEW MEXICO**

Plaintiff-Appellee,

v.

**RAFAEL ARIAS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Peter James O'Connor, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Brian Parrish, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant Rafael Arias was convicted by a jury of the following sex crimes perpetrated against his daughter (Child): two counts of first-degree criminal sexual penetration of a minor, contrary to NMSA 1978, Section 30-9-11(D)(1) (2009); two counts of second-degree criminal sexual contact of a minor, contrary to NMSA 1978, Section 30-9-13(B)(1) (2003); and two counts of third-degree criminal sexual contact of a minor, contrary to Section 30-9-13(C)(1). Defendant appeals his convictions,

advancing three primary arguments. First, Defendant asserts that the district court erred in denying his motion for a new trial, filed after Child recanted her trial testimony at his sentencing hearing. Second, Defendant argues the district court committed reversible error when it allowed the State's expert witness on child sexual abuse and trauma to comment on Child's credibility. Lastly, Defendant argues that there is insufficient evidence supporting each conviction because the State failed to establish that the alleged crimes occurred within the time period identified in the indictment. We affirm.

## DISCUSSION

### I. Defendant's Motion for a New Trial

{2}     At trial, only three witnesses testified for the State: the investigating officer, Child, and an expert on child sexual assault and trauma. Child was the only witness who provided any factual testimony supporting the accusations against Defendant. The State introduced no other evidence of either a direct or circumstantial nature connecting Defendant to the charged offenses. At trial, Child testified extensively about the various assaults she suffered at the hands of Defendant.

{3}     Despite what Child told jurors, she recanted her trial testimony at Defendant's sentencing hearing. At sentencing, Defendant called Child, over the State's objection, to testify for reasons not readily apparent at the outset of the hearing. Child willingly took the witness stand, and defense counsel immediately asked Child if she remembered testifying at trial, to which she responded, "Yes." Defense counsel then asked whether Child was "truthful at trial" when Child said Defendant sexually abused her. The district court immediately halted the hearing to give Child the opportunity to seek counsel.

{4}     Defendant thereafter filed a motion for a new trial, asserting that Child's recantation testimony at sentencing constituted newly discovered evidence justifying such relief. At the following hearing on Defendant's motion, Defendant again called Child to testify. The district court began the hearing by questioning Child, during which Child confirmed that she had previously attempted to recant her trial testimony and that she understood such an act exposed her to a charge of perjury. The district court then ensured Child understood her rights against self-incrimination and that she had been fully advised by an attorney on the matter. After the district court's questions, the defense attorney asked Child about each alleged offense discussed by Child at trial, and whether Child had "lied" during her testimony.

{5}     Regarding each alleged offense, Child stated that her trial testimony was false and that Defendant never assaulted her. The defense attorney finished his questions by asking Child whether Defendant had "ever sexually penetrated [her] with his penis—ever—in [her] lifetime." Child responded, "No." Defense counsel then asked whether Defendant had ever touched her "in a sexually abusive way—ever—in [her] lifetime." Child again responded, "No." Child thereafter repeated her assertion that she lied at trial.

**{6}** After cross-examination by the State, which led to no further changes to Child's recantation, the district court reserved ruling on Defendant's motion for a new trial and permitted the parties fifteen days to submit additional filings. The State filed two supplemental response briefs in which it described three jailhouse phone calls between Defendant and others that, according to the State, indicated "persons engaged in improper influence of [Child] to cause her to change her testimony." Another hearing was then held during which the State attempted to admit the phone calls into evidence. The district court interrupted the State during its introduction of these phone calls, and the following exchange occurred:

District court: [Defense counsel], do you have any objection to the State's proffer made i[n] response[s] that there were three phone calls made and one of them said [...] is contained in the State's [supplemental] response [to Defendant's motion]

. . . .

Defense counsel: You're asking me to . . . give that credence?

District court: No. I'm asking if you have any reason to believe that the phone calls were [...] made or they were not stated as represented by the State in their supplementals.

Defense counsel: No, Judge. I don't have any reason to believe that they weren't made or tha[t] that's not, in essence, what was said.

District court: Alright. Any additional argument, [prosecution]?

Without much further discussion, the district court took judicial notice of the phone calls as they were represented by the State in its supplemental briefing, did not admit them into evidence or verify their content, and denied Defendant's motion for a new trial.

**{7}** In its order, the district court stated three general bases for its decision. First, it stated, without clear explanation, that the jury verdict was "not based on uncorroborated testimony." Second, the district court found, based on the State's characterization of the phone calls between Defendant and others—and Defendant's associated apparent concession to the nature and occurrence of such calls—that Child's recantation "occurred under suspicious circumstances and undue influence." It concluded that there "was some plan afoot" to invalidate the jury verdict. And third, the district court found that, regardless of the recantation's credibility, it did not warrant a new trial. On this point, the district court specifically found: (1) that the recantation was not "newly discovered" evidence; (2) Child was subjected to vigorous cross-examination; and (3) Child's recantation "merely reflects potential impeachment material." Defendant appeals.

**{8}** The grant or denial of a motion for a new trial lies within the sound discretion of the district court. *State v. Jackson*, 2018-NMCA-066, ¶ 32, 429 P.3d 674; *State v. Sena*,

1987-NMSC-038, ¶ 6, 105 N.M. 686, 736 P.2d 491. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**{9}** All motions for a new trial made on the basis of newly discovered evidence can be granted only if such evidence, regardless of its form, meets each of the following requirements:

> (1) it will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of due diligence; (4) it must be material; (5) it must not be merely cumulative; and (6) it must not be merely impeaching or contradictory.

*Case v. Hatch*, 2008-NMSC-024, ¶ 5, 144 N.M. 20, 183 P.3d 905 (internal quotation marks and citation omitted);[1] *see* Rule 5-614 NMRA. These six requirements are referred to herein as the "significance factors" or, collectively, the "significance prong" of the analysis. *Case*, 2008-NMSC-024, ¶ 34. "[A] negative finding of any of the six factors under the significance prong is dispositive." *Id.*

**{10}** When the newly discovered evidence is a trial witness's retraction of their testimony, the credibility of the retraction also must be considered. *See id.* ¶ 17. The following credibility factors, if present, weigh in favor of granting a motion for a new trial on the basis of a recantation:

> (1) the original verdict was based upon uncorroborated testimony; (2) the recantation is corroborated by additional new evidence; (3) the recantation occurred under circumstances free from suspicion of undue influence or pressure from any source; (4) the record fails to disclose any possibility of collusion between the defendant and the witness between the time of the

---

[1]*Case* applied this principle to a petition for habeas corpus, not a motion for a new trial. 2008-NMSC-024, ¶ 17. Nonetheless, the *Case* Court observed that the analyses of both a motion for a new trial and a petition for habeas corpus are substantially similar. *See id.* ¶ 12 ("Aside from the passage of time, we see little difference between a motion for new trial and a petition for writ of habeas corpus based on the newly-discovered evidence of a recantation."). We note for clarity, however, that appellate review of petitions for habeas corpus are not always constrained by the requirements applicable to motions for a new trial when the petitioner makes a claim of actual innocence. *See Montoya v. Ulibarri*, 2007-NMSC-035, ¶ 32, 142 N.M. 89, 163 P.3d 476 ("When examining a freestanding claim of actual innocence, we will not be constrained by the requirements applicable to motions for a new trial."). We, therefore, rely on *Case* and other precedent concerning habeas petitions only to the extent they do not conflict with existing precedent regarding direct appeals of a ruling on a motion for a new trial. Ultimately, a habeas proceeding may well be a superior opportunity to explore those issues Defendant raises related to Child's posttrial recantation.

trial and the retraction; and (5) the witness admitted the perjury on the witness stand and thereby subjected [themself] to prosecution.

*Id.* ¶ 5 (internal quotation marks and citation omitted).[2] None of these factors, herein referred to as the "credibility factors," are alone dispositive of a defendant's motion for a new trial. *See Case*, 2008-NSMC-024, ¶¶ 17, 34. Rather, they govern the district court's determination regarding the believability of a recantation and may be weighed when granting or denying a motion for a new trial. *See Sena*, 1987-NMSC-038, ¶ 6 (stating that a positive finding under each credibility factor "indicate[s] that a new trial should be granted"). Throughout both sets of factors in the above analysis, we remain cognizant of the time-honored principle that "courts must act with great reluctance and with special care and caution before accepting the truth of a claim of perjury, and should properly require the evidence to affirmatively establish the perjury in such clear and convincing manner as to leave no room for reasonable doubt that perjury was committed." *Jackson*, 2018-NMCA-066, ¶ 34 (citing *State v. Betsellie*, 1971-NMSC-076, ¶ 12, 82 N.M. 782, 487 P.2d 484).

**{11}** Here, Defendant challenges the district court's conclusions that (1) the verdict was "not based on uncorroborated testimony"; (2) the recantation was not credible because it occurred "under suspicious circumstances and undue influence"; and (3) that it was not "new evidence," but merely impeached Child's trial testimony. We conclude that while the district court was incorrect that the verdict was corroborated by evidence other than Child's testimony, it did not abuse its discretion in making either of its other determinations.

**{12}** First, as stated above, Child's trial testimony was the only evidence offered by the State inculpating Defendant in the charged offenses. The State admitted no other evidence of Defendant's conduct and did not have any other fact witnesses supporting Child's testimony about Defendant's crimes. The district court states in its order that Child gave several pretrial statements consistent with her trial testimony, but we do not view statements made outside of the presence of the jury as corroborating evidence. *See Case*, 2008-NMSC-024, ¶ 41 (acknowledging that the trial testimony later recanted was corroborated by evidence admitted *at trial*); *Sena*, 1987-NMSC-038, ¶ 7 (stating that the retracted testimony was supported by another witness's trial statements as well as other evidence). Thus, there is no indication in the record before us that Child's testimony, and, therefore, the verdict, was supported by any other evidence, and the district court's conclusion to the contrary was error.

---

[2]Previous cases considering motions for a new trial omitted the second factor listed here. *See, e.g., Sena*, 1987-NMSC-038, ¶ 6. In reliance on these cases, the district court in the instant case applied the older, four-factor test. However, Case explained that the second factor, regarding evidence corroborating the recantation, was drawn from case law considering motions for a new trial as well as habeas petitions. *See* 2008-NMSC-024, ¶ 16 (citing both *State v. Chavez*, 1974-NMCA-138, 87 N.M. 38, 528 P.2d 897, a direct appeal, and *State v. Stephens*, 1982-NMSC-128, 99 N.M. 32, 653 P.2d 863, an appeal related to a habeas petition, in support of adding the second factor listed above). Thus, we consider the five-factor test controlling in the direct appeal context as well as review of habeas corpus petitions and apply it here.

**{13}**     Nonetheless, the district court's second conclusion—that Child's recantation occurred under undue influence and there was some plan afoot to invalidate the jury verdict—is consistent with the facts and circumstances of the case. We view such findings to be a determination that factors three and four of the above-described credibility analysis were not satisfied. *See Case*, 2008-NMSC-024, ¶ 17. In support of these findings, the district court relied on the State's supplemental briefing in response to Defendant's motion, which contained excerpts from several posttrial jailhouse phone calls between Defendant and others. According to the State, these phone calls indicate there was a plan to get Child to change her testimony at sentencing and invalidate the jury verdict. As represented in the State's briefs, one such phone call included the following statements:

> Defendant:    . . . . Have you talked to my friend?
>
> Caller:    Yes, but the reason your friend hasn't called you is because the other side is listening to your calls and they can take the kids from her again. . . . She can't tell you anything over the cell because the other side will use it against you to win. But don't worry. You think your friend isn't doing anything to help. I'm telling you there is a plan already with the attorney for sentencing. That's why your friend can't talk to you.

Defendant asserts that the district court erred by not admitting the actual phone calls into evidence. However, Defendant did not file a response to the State's supplemental briefing regarding the phone calls, and his attorney later conceded at the hearing that he had no reason to believe that the State's characterization of the calls was not, "in essence, what was said." Defense counsel's response constitutes Defendant's acquiescence to the State's characterization of the content of the calls and, as such, Defendant has waived any challenge to this characterization on appeal. *See State v. Frazier*, 2007-NMSC-032, ¶ 38, 142 N.M. 120, 164 P.3d 1 ("Acquiescence in the admission of evidence constitutes waiver of the issue on appeal." (text only) (citation omitted)).

**{14}**     The content of the phone calls, as represented in the State's briefs and Defendant's stipulation to the State's representation of them, sufficiently supports the district court's conclusion that Child's recantation lacked credibility and occurred under suspicious circumstances indicative of collusion and undue influence. The district court, therefore, did not abuse its discretion in weighing these facts in its order.

**{15}**     The third and final[3] basis for the district court's denial of Defendant's motion constitutes conclusions regarding the six-factor "significance prong" of the motion for a new trial analysis. As to that inquiry, the district court concluded, in pertinent part, that Child's testimony is "not new evidence," but "merely reflects potential impeachment

---

3We note that while the district court did not address the second factor in the credibility factors of our analysis—whether the recantation was supported by additional new evidence—the record establishes no such new evidence and, therefore, additionally supports the district court's findings.

material" because its sole purpose was to discredit the veracity of Child's trial testimony. We read this conclusion to amount to a finding that Child's recantation was "merely impeaching [of] or contradictory [to]" her trial testimony, and Defendant's motion, therefore, fails to satisfy all of the factors required to grant a motion for a new trial. *See Jackson*, 2018-NMCA-066, ¶ 32 ("[N]ewly discovered evidence must . . . not be merely impeaching or contradictory." (internal quotation marks and citation omitted)). We agree.

**{16}** In reaching this conclusion, the district court primarily relied on *Jackson*, in which the recanting witness at issue made posttrial statements that cast doubt on her truthfulness at trial. *See id.* ¶ 30. In a recorded phone conversation made after trial, the witness was asked why she lied at trial, and she responded, "They told me that if I didn't say anything that I would have to stay in jail." *Id.* We stated that the recorded conversation, "if probative of any issue at all . . . went to the truthfulness of [the witness's] testimony." *See id.* ¶ 33. Although the witness "never affirmatively admitted to having been untruthful," we noted the witness's credibility "was an issue that [the d]efendant had already explored extensively at trial." *Id.* ¶¶ 30, 33. We concluded by explaining that the recorded conversation was "far from the conclusive evidence necessary to demonstrate its usefulness as more than impeachment evidence." *Id.* ¶ 34.

**{17}** The same reasoning applies to the instant case. Child's trial testimony was extensive, and she explained with specificity numerous assaults Defendant committed against her. Before the jury, Child described the locations, the various circumstances of, and the specific sensations associated with each assault against her. Specifically, Child described, several times, the feeling of Defendant's penis inside of her and his semen in or near her vagina and buttocks. This testimony was specific, detailed, and described events that are consistent with having personally experienced characteristics of sexual abuse of which typical children of Child's age are unaware.

**{18}** Child was thoroughly cross-examined at trial about her memory of the events in question, and whether anyone had influenced her trial testimony. Defendant concedes in briefing to this Court that Child's credibility was tested on cross-examination, including through inquiry into whether "[Child] was lying." While Child's recantation testimony after trial was more categorical than the retraction at issue in *Jackson*, it constitutes a bare assertion that her trial testimony was, in its entirety, a lie. *See* 2018-NMCA-066, ¶¶ 30-34. We, therefore, discern no value in Child's retraction other than impeaching or contradicting her trial testimony.

**{19}** We recognize that such is precisely the point Defendant is making on appeal and that Child's credibility is of paramount importance in this case due to the lack of other evidence supporting Defendant's convictions. *See State v. Fuentes*, 1960-NMSC-035, ¶ 4, 67 N.M. 31, 351 P.2d 209 ("In the case as originally tried, the testimony stood unimpeached. It is now seriously questioned, and another jury would have the benefit of all the facts in order to arrive at a fair decision."). Child's categorical retraction, however, must be considered alongside the dubious circumstances in which it arose and the trial record, which included her detailed recollection of events she experienced at the hands

of Defendant. As we have said, the district court did not abuse its discretion in weighing the State's characterization of—and Defendant's associated acquiescence to—Defendant's jailhouse phone calls. Were we to discredit these findings, the credibility factors in our analysis would become merely superfluous to the significance prong and render a district court's findings regarding the credibility of witnesses meaningless. Such is not the practice of this Court. *See State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964 ("As a reviewing [C]ourt we do not sit as a trier of fact; the district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses."). We further note that credibility of a recantation is a requirement to grant a motion for a new trial in federal courts, which further supports our conclusion regarding the importance of the credibility factors in our analysis. *See, e.g.*, *United States v. Ramsey*, 726 F.2d 601, 605 (10th Cir. 1984) (stating that "[i]f the court finds that the recantation is false, it need not order a new trial" and remanding the case for the district court to make a credibility finding, which it had not).

**{20}** Indeed, we are buttressed by the above-stated admonition that we "must act with great reluctance and with special care and caution before accepting the truth of a claim of perjury, and should properly require the evidence to affirmatively establish the perjury in such clear and convincing manner as to leave no room for reasonable doubt that perjury was committed." *Jackson*, 2018-NMCA-066, ¶ 34 (internal quotation marks and citation omitted). Viewing the record before us in totality, we cannot say that the district court abused its discretion in denying Defendant's motion for a new trial. *See Rojo*, 1999-NMSC-001, ¶ 41 ("We cannot say the [district] court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." (internal quotation marks and citations omitted)).

## II.    Expert Witness Testimony

**{21}** Next, Defendant argues that it was plain error for the district court to permit the State's expert witness on child sexual abuse and trauma to comment on Child's credibility. Defendant asserts that the expert witness, who had never met nor spoken to Child at the time of trial, improperly bolstered Child's credibility when the expert stated that she had never encountered an alleged victim who had lied about suffering abuse and that she always believed a victim's statements regarding abuse.

**{22}** Defendant did not object at the time such testimony was made, so our review is limited to plain error. *See State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056. "To find plain error, the Court must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *Id.* (internal quotation marks and citation omitted). "[I]n determining whether there has been plain error, we must examine the alleged errors in the context of the testimony as a whole." *Id.* (internal quotation marks and citation omitted).

**{23}** In support of his argument, Defendant points to *State v. Lucero*, 1993-NMSC-064, ¶¶ 21-22, 116 N.M. 450, 863 P.2d 1071, in which an expert witness commented on the credibility of an alleged victim. In *Lucero*, our Supreme Court noted that the expert

had gone beyond discussing the alleged victim's psychological disorder. *Id.* ¶ 21. The Court stated that the expert's testimony "really amounted to a repetition of the complainant's statements regarding sexual abuse" and that the expert testified (1) that the alleged victim had, in fact, been molested; and (2) that it was the defendant who committed the abuse. *Id.* The Court concluded such testimony constituted plain error. *Id.* ¶ 22.

**{24}** The circumstances of this case are distinct from those of *Lucero.* Here, the expert testified that, while she had never met nor spoken to Child, she had never encountered a child who lied about the abuse they had allegedly suffered. We view such to amount to a remark on the expert's experience and not a direct comment on Child's credibility. Indeed, the expert went on to say that there is a "two-to-ten percent chance that [an] allegation is untrue." The expert's later statement, elicited on cross-examination, that she always believes persons alleging they have been sexually assaulted merely exposes the expert's bias and is not a direct comment on Child's credibility. Such a statement does not rise to the level of impropriety discussed in *Lucero* nor does it give us "grave doubts concerning the validity of the verdict." *See Montoya*, 2015-NMSC-010, ¶ 46 (internal quotation marks and citation omitted); *see also State v. Samora*, 2016-NMSC-031, ¶ 42, 387 P.3d 230 ("Evidence will be excluded as improper bolstering when it directly comments on a witness's credibility, but not when it provides incidental verification of a witness's story or only indirectly bolsters that witness's credibility." (text only) (citation omitted)).

**{25}** We nonetheless pause to note that the expert's comments are troubling given the importance of witness credibility in a case such as this where there is little evidence beyond testimony. *See State v. Smith*, 2024-NMCA-068, ¶ 9, 556 P.3d 998 ("When the only evidence consists of the victim's accusation and the defendant's denial, expert testimony on the question of who to believe is nothing more than advice to jurors on how to decide the case." (internal quotation marks and citation omitted)). Even indirect comments on a witness's credibility may give rise to reversible error. *See id.* ¶¶ 8-16. While, for the reasons discussed above, we do not believe the expert's comments in this case rise to the level of plain error, we caution trial counsel for the State that such testimony can cast doubt on an otherwise justly obtained verdict. Despite these concerns regarding the propriety of the expert's comments, we find no plain error in the district court's admission of the expert's testimony at trial.

### III. Sufficiency of the Evidence

**{26}** Lastly, Defendant asserts that all of his convictions lack sufficient evidentiary support and must be vacated. While not entirely clear from Defendant's briefing, we view Defendant to assert the State failed to establish that the alleged offenses occurred within the time frame identified in its indictment.

**{27}** In reviewing a jury verdict for support by substantial evidence, we view all evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v.*

*Garcia*, 2016-NMSC-034, ¶ 15, 384 P.3d 1076 (internal quotation marks and citation omitted).

**{28}** Here, Child testified that all the alleged offenses occurred during "second grade and third grade" or "2013 through 2014." Child further stated that all of the assaults took place during winter "close to Christmas, December." Defendant points out that Child conceded on cross-examination that the offenses took place over the course of "six [or] seven years." However, as stated above, we "resolv[e] all conflicts in the evidence in favor of the jury verdict." *Id.* The State's indictment and the jury instructions in this case all alleged that the crimes with which Defendant was convicted occurred "on or between December 1, 2013 and February 28, 2014." We conclude that Child's testimony regarding the time of year, being sometime around Christmas in 2013 and 2014, sufficiently supports the jury's verdict. *See id.* ("So long as a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions." (internal quotation marks and citation omitted)).

**CONCLUSION**

**{29}** We affirm.

**{30}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**I CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge (specially concurring)**

**DUFFY, Judge (specially concurring).**

**{31}** I concur in the majority's disposition of Defendant's request for a new trial but write separately out of concern that the rationale applied in this case will foreclose any future attempt to obtain a new trial based on a witness's recantation of their trial testimony.

**{32}** Our Supreme Court has articulated what appears to be a two-part test for evaluating a request for a new trial on the basis of a recantation. *See Case*, 2008-NMSC-024, ¶¶ 5, 17. When presented with such a motion, a court must (1) weigh the credibility factors, and (2) determine whether the request meets all six of the significance factors. *Id.* ¶ 12. In this case, the district court found that the witness's recantation was not credible because it appeared the witness had been pressured to recant her testimony. In my view, this is enough to affirm the district court's decision. However, while *Betsellie*, 1971-NMSC-076, ¶ 12, indicates that a failure of the credibility prong may be enough to justify the denial of a motion for new trial, we lack a clear

statement from the Supreme Court saying that a defendant's failure to establish *either* prong is dispositive. *Cf. Case*, 2008-NMSC-024, ¶ 34 ("[A] negative finding of any of the six factors under the *significance* prong is dispositive." (emphasis added)).

**{33}** It is perhaps because we lack such a definitive holding that the majority feels compelled to evaluate the district court's findings under the significance prong as well. In doing so, the majority concludes that Child's recantation is merely impeaching or contradictory—a failure of the sixth significance prong. *Maj. op.* ¶ 18. It is the rationale in this portion of the opinion, paragraphs fifteen through eighteen, that gives me pause and prevents me from fully concurring.

**{34}** The majority concludes that Child's post-trial recantation "constitutes a bare assertion that her trial testimony was, in its entirety, a lie" and has no value "other than impeaching or contradicting her trial testimony." *Id.* But the same could be said of *all* recantations—by their very nature, recantations are a repudiation or contradiction of the testimony offered by the witness at trial. Consequently, under the majority's rationale, it is difficult to imagine any scenario where a motion for a new trial predicated on a witness's post-trial recantation could satisfy the significance prong. This cannot be the case. The Supreme Court clearly envisioned circumstances where a recantation would require a new trial, even if the recanting witness provides a contrary account during a subsequent retrial, otherwise there would be no need for the two-part test in *Case*. The Tenth Circuit has acknowledged as much, noting that a recantation by the government's principal witness was "not merely impeaching or cumulative. When a witness recants his testimony, presumably he will testify as to the new version at a new trial. Thus, the recantation is substantial evidence." *Ramsey*, 726 F.2d at 604.

**{35}** I think it is particularly important to recognize such a distinction in a case like the one before us, where the recanting witness came forward to admit to perjury, and her testimony was "the only evidence offered by the State inculpating Defendant in the charged offenses." *Maj. op.* ¶ 12. This is what distinguishes the instant case from *Jackson*, where the defendant sought to introduce a phone call that suggested one of the witnesses against him had been untruthful during trial. In fact, there was no recantation at issue in *Jackson*, only an effort to impeach a trial witness with a post-trial statement. While *Jackson* is a clear example of a defendant's effort to use a post-trial statement for impeachment purposes, it does not offer any guidance on the issue presented here, and the district court and the majority opinion's reliance on *Jackson* is misplaced.

**{36}** The question of whether a primary witness's admission to perjury, and wholesale recantation of her trial testimony, is merely impeaching or contradictory of her trial testimony does not appear to have been addressed in a prior New Mexico case. The closest analog are cases where a witness provides one account of events before trial, a different account at trial, and a "recantation" after trial asserting that the first account was the true account. *See State v. Whorley*, 2020-NMSC-021, ¶ 47, 476 P.3d 1212 ("The fact that [the d]efendant continues to assert he is innocent does not alter the nature of the recantations, which are merely contradictory and impeaching because at

trial, while giving the inconsistent testimony that they now recant, [the witnesses] admitted that they previously lied to the police. [The witnesses'] recantations do not appear to be qualitatively different from their original statements, and instead the recantations go to the question of the weight of their testimony concerning conflicting statements they previously made."). Under those circumstances, the Supreme Court concluded that the recantation was merely cumulative or impeaching. *Id.* But those are not our facts. I am persuaded that the Tenth Circuit's view is correct: when a conviction is obtained based on a single witness's testimony and that witness later recants their testimony in whole, such repudiation of their trial testimony is not merely impeaching or contradictory of their trial testimony, it is an acknowledgment that the version of events recounted at trial should never have been put forth as evidence at all. Certainly, a recanting witness could be impeached with their earlier account during retrial, but that does not render the recantation itself mere impeachment material, nor does it prohibit the witness from testifying truthfully to a different version of events at a subsequent retrial. That a witness must admit to perjury in conjunction with a recantation, coupled with the high bar a defendant must meet to gain a retrial, provide sufficient safeguards to discourage abuse of this justification for a new trial.

**{37}** For all of these reasons, I disagree with the majority's secondary holding that the recantation in this case fails the sixth significance prong, and would not have reached it in the first place given that the district court here determined the recantation not to be credible.

**{38}** As a final note, I want to underscore that the expert witness testimony elicited by the State in this case was highly improper. The expert's statements that she had never encountered a child that had lied about abuse and that there is only a "two-to-ten percent chance that [an] allegation is untrue" together tend to establish that Child was truthful and *statistically quantifies that likelihood for the jury*. This is especially problematic where the State's entire case hinges on the testimony, and credibility, of a single child witness. *See Smith*, 2024-NMCA-068, ¶¶ 8-16. It is incumbent on the State to take care to avoid eliciting testimony that tends to bolster the credibility of its witnesses. Nevertheless, it is also incumbent on the defense to object, and the district court to attempt to cure, if possible, the prejudice arising from such comments. Defendant failed to do so in this case, and I agree with the majority's conclusion that these statements do not rise to the level of plain error.

**MEGAN P. DUFFY, Judge**